## NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2023 KA 0942

STATE OF LOUISIANA

VERSUS

DAMION D. THOMPSON

**DATE OF JUDGMENT:**     MAY 3 1 2024

ON APPEAL FROM THE TWENTY-SECOND JUDICIAL DISTRICT COURT
PARISH OF WASHINGTON, STATE OF LOUISIANA
NUMBER 20 CR3 146012, DIVISION A

HONORABLE RAYMOND S. CHILDRESS, JUDGE

* * * * * *

J. Collin Sims
District Attorney
Butch Wilson
Assistant District Attorney
Covington, Louisiana

Counsel for Appellee
State of Louisiana

Luke Lancaster
Franklinton, Louisiana

Mary Constance Hanes
New Orleans, Louisiana

Counsel for Appellant
Damion D. Thompson

* * * * * *

BEFORE: GUIDRY, C.J., CHUTZ, AND LANIER, JJ.

**Disposition:** **CONVICTIONS ON ALL COUNTS AFFIRMED. SENTENCES ON COUNTS ONE
AND THREE AFFIRMED. SENTENCE ON COUNT TWO VACATED AND REMANDED FOR
RESENTENCING.**

**CHUTZ, J.**

The defendant, Damion D. Thompson, was charged by grand jury indictment with one count of second degree murder (count one), a violation of La. R.S. 14:30.1, one count of illegal use of weapons (count two), a violation of La. R.S. 14:94(A), and one count of aggravated battery (count three), a violation of La. R.S. 14:34(A). He pled not guilty and, following a jury trial, was found guilty as charged on all counts. The trial court denied the defendant's motion for new trial and motion for post-verdict judgment of acquittal and sentenced him to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence on count one, five years imprisonment at hard labor on count two, and ten years imprisonment at hard labor on count three, with each sentence to be served consecutively. The trial court denied the defendant's motion to reconsider sentence. The defendant now appeals, challenging the sufficiency of the evidence on all counts. For the following reasons, we affirm the convictions on all counts, affirm the sentences on counts one and three, and vacate the sentence and remand for resentencing on count two.

## FACTS

On the evening of August 13, 2020, Marcus Tennison attended a birthday party at Peter's Bar ("Peter's") in Bogalusa, Louisiana. As Tennison spoke to a friend, Tobias Roberts, in the parking lot, an individual ran up and fired a gun at them multiple times, killing Tennison and injuring Roberts. After an eyewitness identified the defendant as the gunman, the defendant was arrested for the second degree murder of Tennison, aggravated battery of Roberts, and illegal use of a weapon.

## SUFFICIENCY OF THE EVIDENCE

In his sole assignment of error, the defendant argues the evidence at trial was insufficient to support his convictions. Specifically, he asserts the State failed to

2

prove he was the perpetrator of the offenses, and the physical evidence contradicted eyewitness testimony identifying him as the shooter.

A conviction based on insufficient evidence cannot stand, as it violates due process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. The standard of review for sufficiency of the evidence to support a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the State proved the essential elements of the crime and the defendant's identity as the perpetrator of the crime beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *State v. Coleman*, 2021-0870 (La. App. 1st Cir. 4/8/22), 342 So.3d 7, 11, writ denied, 2022-00759 (La. 11/21/23), 373 So.3d 460; see also La. C.Cr.P. art. 821(B).

When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. *Coleman*, 342 So.3d at 12. When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. *State v. Bessie*, 2021-1117 (La. App. 1st Cir. 4/8/22), 342 So.3d 17, 22, writ denied, 2022-00846 (La. 9/20/22), 346 So.3d 802.

Second degree murder is defined, in pertinent part, as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1). Specific criminal intent is that state of mind which exists

3

when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Specific intent may be proven by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant's actions or facts depicting the circumstances. Specific intent is an ultimate legal conclusion to be resolved by the factfinder. *Coleman*, 342 So.3d at 12.

Illegal use of weapons or dangerous instrumentalities includes the intentional or criminally negligent discharging of any firearm where it is foreseeable that it may result in death or great bodily harm to a human being. La. R.S. 14:94(A).

Aggravated battery is defined as a battery committed with a dangerous weapon. La. R.S. 14:34(A). Battery is the intentional use of force or violence upon the person of another. La. R.S. 14:33. A dangerous weapon includes any instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm. La. R.S. 14:2(A)(3).

The State bears the burden of proving the elements of the offense, along with the burden of proving the defendant's identity as the perpetrator. When, as in this case, the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification. A positive identification by only one witness is sufficient to support a conviction. *Bessie*, 342 So.3d at 22-23.

Paul Kates, Jr., Marcus Tennison's friend, testified that on August 13, 2020, he was cooking under a tent located outside of Peter's. At some point, he and Tennison went inside Peter's for a while and eventually returned outside, where Tennison briefly spoke to Tobias Roberts. Kates testified that while he was cooking under the tent, Tennison walked away from Roberts, after which he observed the defendant shoot Tennison multiple times "in the face and all up and around" before fleeing the area. On cross-examination, however, Kates testified he

4

was one hundred percent sure the defendant shot Tennison in the face only. Kates further testified he had a clear view of the defendant, allowing him to recognize the defendant's gait, as well as his face which was uncovered. According to Kates, the defendant had a distinctive walk due to a prior gunshot wound, and he knew the defendant well from around the neighborhood. In addition to identifying the defendant as the shooter in a photographic lineup, Kates made an in-court identification of the defendant as the gunman. Finally, Kates testified that when questioned by police, he informed them about Tennison's relationship with Tatisha Smith, the defendant's girlfriend at the time, and the defendant's knowledge thereof.

Tobias Roberts, the surviving victim, testified that upon arriving at Peter's, he spoke to Kates and two other men cooking outside under a tent. After Kates went inside Peter's, Roberts left the tent and spoke to Tennison, who had just walked outside. Shortly after, Kates exited Peter's and resumed cooking under the tent, and Tennison sat on a rail in front of Roberts, who was sitting in a chair near the entrance to Peter's. Roberts testified that he then heard gunshots, and a bullet struck him in the hand. Because his view was blocked by a nearby vehicle, he could not identify the shooter. Roberts initially testified that at the time of the shooting, Kates was near the road, away from Peter's and the tent, and was in a position to see the shooter. However, on cross-examination, he testified Kates was under the tent when the shooting occurred. Roberts also testified that prior to the murder, Tennison told him he was in a relationship with Smith.

Ariel Brown, Tennison's former fiancée, testified that at the time of the murder, she and Tennison had broken up but were close friends. Brown testified that during that time, Tennison was in an intimate relationship with Smith. She further testified Tennison spoke to her about his relationship with Smith and told her it was not anything serious.

5

Dr. Michael DeFatta performed the autopsy on Tennison and testified that he suffered gunshot wounds to his thighs, hip, chest, and back, which ultimately caused his death. Dr. DeFatta further testified that because there was no soot or stippling near the wounds, the shooter must have been further than thirty-six to forty-three inches away.

Danisha Levi testified that one month prior to the murder, she was at the home of Smith, the defendant's girlfriend at the time. At some point, the defendant entered the home and stated he "just pulled a gun out on" Tennison. Levi further testified that while she did not observe the defendant "pull a gun on" Tennison, he explicitly told her and Smith he did. Additionally, Levi testified that Smith confirmed she was in a relationship with Tennison and argued with the defendant about it.

Detective Mitchell Castleberry with the Bogalusa Police Department testified that after the murder, he received several anonymous phone calls suggesting the defendant was the gunman. Through the investigation, he learned Kates potentially had information regarding the murder and brought him in for questioning. Detective Castleberry testified he then obtained an arrest warrant for the defendant after Kates identified him as the shooter. Detective Castleberry further testified that in his interview with Levi, she stated she witnessed an argument between Smith and the defendant, wherein the defendant told Smith that "he was going to end it all" while referencing Tennison.

Ryan Simmons testified as a defense witness and stated the defendant had lived with him in Hammond for approximately three weeks before the shooting. According to Simmons, he and the defendant were at home all day until around 8:00 p.m. on August 13, 2020, when he and the defendant attended a child's birthday party at the home of a friend, Michael Mosner. They remained at the party until around midnight then returned to Simmons's home. Simmons testified

6

the defendant was with him the entire night and did not leave the party at any time. On cross-examination, he further testified the defendant arrived at his home in Smith's car, and they later drove to Smith's home in Bogalusa to return the car. When asked about inconsistencies between his story and the defendant's story, he stated he was surprised to learn the defendant did not tell police he went to Mosner's house, drove Smith's car, or traveled to Bogalusa.

The defendant provided an oral statement to police in which he denied shooting the victims. He stated he had been living in Hammond since August 9, 2020, when he attended his child's birthday party with the child's mother. While he initially stated he had not returned to Bogalusa since that date, he later stated that at around 2:00 or 3:00 a.m. on August 10, 2020, he traveled to Smith's home in Bogalusa, where she kicked him out. He then traveled to Covington, after which Simmons picked him up at a gas station and drove him to Hammond. He denied being at Peter's on the night of the shooting, August 13, 2020, and stated he was staying at the home of a friend, Markie, in Hammond that night. The defendant further denied having any issues with Tennison or knowing Smith was having relations with Tennison. Finally, he stated that after he was shot in 2016, his ability to walk diminished.

On appeal, the defendant asserts the State failed to prove his identity as the shooter because only one eyewitness, Kates, identified him, and there was no physical evidence that linked him to the shooting. Specifically, he claims there was an irreconcilable conflict between Kates's testimony that Tennison was shot in the face and the physical evidence showing he was shot in his torso and legs. He further claims there was a discrepancy between the testimony of Kates and Roberts regarding where Kates was standing at the time of the shooting. Finally, the defendant argues he had an alibi for the night of the shooting.

7

The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a fact finder's determination of guilt. We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. The fact that the record contains evidence that conflicts with the testimony accepted by the trier of fact does not render the evidence accepted by the trier of fact insufficient. *State v. Dunn*, 2021-0630 (La. App. 1st Cir. 12/22/21), 340 So.3d 77, 85, writ denied, 2022-00095 (La. 4/5/22), 335 So.3d 834.

In finding the defendant guilty, it is clear the jury rejected the defendant's theory that he was misidentified in this case. Kates, who knew the defendant for years and immediately recognized his face and distinctive walk, testified the defendant shot Tennison multiple times before he fled the scene. In his own statement, the defendant admitted he had been shot in 2016 and his ability to walk diminished thereafter. Thus, based on Kates's testimony, the jury could have concluded Kates was present during the shooting and observed the defendant's face and familiar gait, allowing him to identify the defendant. Further, Kates positively identified the defendant as the gunman both in a photographic lineup shortly after the murder and at trial. In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a factual conviction. *Bessie*, 342 So.3d at 23.

Moreover, Roberts, Levi, and Brown corroborated Kates's testimony regarding Tennison's relationship with the defendant's girlfriend, Smith, as well as

8

the defendant's knowledge and anger about such relationship. Levi further established the defendant admitted to pointing a gun at Tennison and argued with Smith regarding her relationship with Tennison, wherein the defendant threatened to kill Tennison. The jury was entitled to credit the State's witnesses describing the defendant's motives and reject the defendant's disavowal of those potential motives. See *State v. Mire*, 2014-2295 (La. 1/27/16), 269 So.3d 698, 700 (per curiam). Accordingly, a rational jury could have concluded the defendant intentionally shot Tennison because Tennison was involved in an intimate relationship with Smith.

While the defendant asserts there was an irreconcilable conflict with Kates's description of the location of Tennison's injuries and the physical evidence, the jury apparently believed certain aspects of Kates's testimony that linked the defendant to the shooting and rejected the defendant's theory of mistaken identity. Kates initially testified Tennison was shot "in the face and all up and around," but later stated he was shot "in the face and no other places." Although the physical evidence showed Tennison was not shot in the face or head, there was a significant amount of blood in that area. Moreover, both Kates and Roberts stated the shooting happened suddenly. Thus, a rational jury could have concluded Kates, under the pressure of the situation, saw the blood and presumed Tennison was shot in the face.

As to the defendant's argument that there was a discrepancy between Kates's testimony and Roberts's testimony regarding Kates's location, the jury heard all of the testimony and assessed the credibility of both witnesses. While Kates testified that he was under the tent during the shooting, Roberts initially testified Kates was near the road but, on cross-examination, stated Kates was under the tent. However, both Kates and Roberts testified Kates was in a location where he was able to see the shooter. Nonetheless, even assuming this was a discrepancy,

9

where there is conflicting testimony about factual matters, the resolution of which depends on a determination of credibility of the witnesses, it is a matter of the weight of the evidence, not the sufficiency of the evidence. See *Dunn*, 340 So.3d at 85.

The verdict also indicates the jury rejected the alibi testimony presented by the defense, and we cannot say they were unreasonable in doing so. Simmons testified he and the defendant stayed at home all day before attending a birthday party at Mosner's home on August 13, 2020. However, the defendant stated in his interview he stayed at his friend Markie's home that night. While the defendant stated he attended a birthday party, it occurred on August 9, 2020, and it was for his child, not Mosner's. Furthermore, the defendant stated he saw Smith in Bogalusa on August 10, 2020, then went to Covington, at which point Simmons drove him to Hammond, where he remained until he was arrested. According to Simmons, he and the defendant went to Bogalusa to return Smith's car, after which he drove them back to Hammond. The jury heard the conflicting testimony, assessed the credibility of Simmons, and rationally rejected the defendant's hypothesis of innocence.

An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the factfinder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. See *State v. Calloway*, 2007-2306 (La. 1/21/09), 1 So.3d 417, 418 (per curiam). Viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found the State proved beyond a reasonable doubt the defendant's identity as the perpetrator of the offenses and all of the elements of second degree murder, illegal use of weapons, and aggravated battery. This assignment of error is without merit.

## PATENT ERROR

Pursuant to La. C.Cr.P. art. 920(2), this court routinely conducts a review of all appeals for error discoverable by mere inspection of the pleadings and proceedings and without inspection of the evidence. *State v. Anthony*, 2023-0117 (La. App. 1st Cir. 11/3/23), 378 So.3d 766, 775. After a careful review of the record, we have found two patent errors.

As to count two, illegal use of weapons, the trial court sentenced the defendant to five years imprisonment at hard labor, citing La. R.S. 14:94(A). On a first conviction of illegal use of weapons, a defendant shall be fined not more than one thousand dollars, or imprisoned with or without hard labor for not more than two years, or both. La. R.S. 14:94(B). Therefore, the maximum sentence allowed by law for the offense was two years, and the defendant's sentence of five years is illegal.[1] When the trial court applies the incorrect sentencing provision, the appropriate remedy is for the reviewing court to vacate the sentence and remand for resentencing. See *State v. Alexander*, 2012-0330 (La. App. 1st Cir. 9/21/12), 111 So.3d 42, 44. Therefore, we vacate the sentence imposed on count two and remand for resentencing on that count in accordance with La. R.S. 14:94(B).

The record further reflects that after the trial court imposed the sentences herein, it incorrectly advised the defendant that he had "[two] years from the date the sentence becomes final to file for post-conviction relief. And that starts to run now." While the prescriptive period for filing an application for post-conviction relief is two years, it begins to run when a defendant's conviction and sentence

---

[1] We note on the first day of trial, the State filed a motion to invoke the firearm sentencing provisions for a violent felony under La. C.Cr.P. art. 893.3. However, the motion was neither discussed on the record nor ruled upon. Furthermore, the defendant was not charged under La. R.S. 14:94(C), (E), or (F). The State did not submit any evidence in support of these arguments, nor did a jury find the defendant guilty of any enhancement under either La. C.Cr.P. art. 893.3 or La. R.S. 14:94(C), (E), or (F). See La. C.Cr.P. arts. 893.2 and 893.3(D) (the determination of whether a firearm was used or discharged is a specific finding of fact to be submitted to the jury and proven by the State beyond a reasonable doubt). Finally, the trial court specifically stated it was sentencing the defendant under La. R.S. 14:94(A).

11

become final under the provisions of La. C.Cr.P. arts. 914 or 922, not from the date of sentencing. See La. C.Cr.P. art. 930.8(A); *State v. LeBoeuf*, 2006-0153 (La. App. 1st Cir. 9/15/06), 943 So.2d 1134, 1142, writ denied, 2006-2621 (La. 8/15/07), 961 So.2d 1158.

Nevertheless, the trial court's failure to correctly advise the defendant of the prescriptive period has no bearing on the sentence and is not grounds to reverse the sentence or remand for resentencing. Further, there is no remedy for an individual defendant who is not told of the limitations period. Accordingly, we decline to remand for resentencing on this basis. See *LeBoeuf*, 943 So.2d at 1142-43. Out of an abundance of caution and in the interest of judicial economy, we advise the defendant that La. C.Cr.P. art. 930.8 generally provides that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if filed more than two years after the judgment of conviction and sentence have become final under the provisions of La. C.Cr.P. arts. 914 or 922. See *LeBoeuf*, 943 So.2d at 1143.

## DECREE

For these reasons, we affirm the convictions on all counts and affirm the sentences on counts one and three. We vacate the sentence on count two and remand for resentencing.

**CONVICTIONS ON ALL COUNTS AFFIRMED. SENTENCES ON COUNTS ONE AND THREE AFFIRMED. SENTENCE ON COUNT TWO VACATED AND REMANDED FOR RESENTENCING.**