943 So.2d 1134 (2006)
STATE of Louisiana
v.
Brandon LEBOEUF.
No. 2006 KA 0153.
Court of Appeal of Louisiana, First Circuit.
September 15, 2006.
*1136 Doug Moreau, District Attorney, Jeanne Rougeau, Assistant District Attorney, Baton Rouge, Counsel for Appellee, State of Louisiana.
Frank Sloan, Mandeville, Counsel for Defendant/Appellant, Brandon LeBoeuf.
Brandon LeBoeuf, Defendant/Appellant, In Proper Person.
Before: KUHN, GAIDRY, and WELCH, JJ.
GAIDRY, J.
The defendant, Brandon LeBoeuf,[1] was originally charged by grand jury indictment with first degree murder, a violation of La. R.S. 14:30. Defendant entered a plea of not guilty. The state later amended the indictment to charge defendant with second degree murder, a violation of La. R.S. 14:30.1.[2] Defendant expressly waived the right to a trial by jury. Following a bench trial, defendant was found guilty as charged on October 18, 2005. He waived sentencing delays and was sentenced to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. Defendant now appeals, assigning error as to the sufficiency of the evidence and the adequacy of the trial court's notification of the prescriptive period for filing an application for postconviction relief. In a pro se supplemental brief, he also argues that the trial court violated his constitutional right to remain silent and failed to afford him the presumption of innocence. For the following reasons, we affirm the conviction and sentence.

FACTS
On the night of May 26, 2004, Corporal Michael Gauthier of the Baton Rouge City Police Department was dispatched to the 300 block of Steele Boulevard in response to a reported shooting. Upon arriving at the scene, Corporal Gauthier discovered a pickup truck stopped in the roadway, with the body of a black male (the victim) slumped in it. He secured the scene for further investigation.
Corporal Robert McGarner (also of the Baton Rouge City Police Department) was the lead detective for the case. He confirmed that four 9mm shell casings were recovered at the scene. No eyewitnesses were located. Photographs of the crime scene were taken. The victim, Lamont *1137 Turner, died as the result of exsanguination from three distinct gunshot wounds. Two medium caliber, jacketed bullet slugs were recovered from the victim's body at the autopsy.
Information obtained during the investigation led to the arrests of Corey Darville, Joseph Chamberlain, Darryl Dean, Mark Caston, and defendant. Based upon statements provided by the other suspects, defendant was charged with the victim's murder.

FIRST COUNSELED ASSIGNMENT OF ERROR
In his first counseled assignment of error, defendant avers that there was insufficient evidence to support his second degree murder conviction. Defendant notes that the evidence of his guilt was strictly circumstantial. He further notes that there were no eyewitnesses to the shooting and no murder weapon was recovered. Defendant contends that comments made by the trial court in finding defendant guilty as charged demonstrate the court's belief that the evidence did not exclude every reasonable hypothesis of innocence. Defendant contends that he should be given the benefit of every reasonable doubt arising from the evidence or the lack thereof, and urges that guilty of manslaughter was the proper verdict.
The constitutional standard for testing the sufficiency of the evidence requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In conducting this review, we also must be expressly mindful of Louisiana's circumstantial evidence test, which provides that for such evidence to support a conviction, assuming every fact proven that the evidence tends to prove, every reasonable hypothesis of innocence must be excluded. La. R.S. 15:438. See also State v. Wright, 98-0601, p. 2 (La.App. 1st Cir.2/19/99), 730 So.2d 485, 486, writs denied, 99-0802 (La.10/29/99), 748 So.2d 1157 and 00-0895 (La.11/17/00), 773 So.2d 732.
The crime of second degree murder is defined, in pertinent part, as "the killing of a human being: (1)[w]hen the offender has a specific intent to kill or to inflict great bodily harm; or (2)(a) [w]hen the offender is engaged in the perpetration or attempted perpetration of . . . armed robbery, first degree robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm." La. R.S. 14:30.1(A)(1), (2)(a).[3]
Specific criminal intent is that "state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). Though intent is a question of fact, it need not be proven as a fact. It may be inferred from the circumstances of the transaction. Thus, specific intent may be proven by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant's actions or *1138 facts depicting the circumstances. Specific intent is an ultimate legal conclusion to be resolved by the factfinder. State v. Buchanon, 95-0625, p. 4 (La.App. 1st Cir.5/10/96), 673 So.2d 663, 665, writ denied, 96-1411 (La.12/6/96), 684 So.2d 923. Specific intent to kill may be inferred from a defendant's act of pointing a gun and firing at a person. State v. Seals, 95-0305, p. 6 (La.11/25/96), 684 So.2d 368, 373, cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997).
According to La. R.S. 14:31(A)(1), manslaughter is a homicide which would otherwise be a first or second degree murder, but is "committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection." However, "[p]rovocation shall not reduce a homicide to manslaughter if the [factfinder] finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed[.]" Id.
"Sudden passion" and "heat of blood" are thus not, properly speaking, elements of the offense of manslaughter; rather, they are mitigatory factors, in the nature of a defense, which tend to lessen the degree of culpability of the homicide. See State v. Rodriguez, 01-2182, p. 17 (La. App. 1st Cir.6/21/02), 822 So.2d 121, 134, writ denied, 02-2049 (La.2/14/03), 836 So.2d 131. The state does not bear the burden of proving the absence of these mitigatory factors. Id. A defendant who establishes by a preponderance of the evidence that he acted in "sudden passion" or "heat of blood" is entitled to a verdict of manslaughter. Id.
State witnesses Dean, Caston, and Darville testified that defendant, nicknamed "Teflon," openly discussed his intentions regarding the victim prior to the shooting. On the day of the shooting, Caston, Dean, and Chamberlain were at Darville's apartment when defendant approached them regarding his intentions.[4] The apartment was located in the Steele Boulevard Apartments, near Government Street, in Baton Rouge.
Dean testified that defendant approached him individually and offered him money in exchange for his assistance with a "lick."[5] Dean declined defendant's offer.[6] According to Dean's testimony, defendant stated that he planned to rob and kill the victim, whom defendant identified. Based upon defendant's statements to him, Dean understood that defendant planned to kill the victim, a known drug dealer, in order to prevent any retaliation. According to Dean, defendant telephoned the victim just prior to the shooting and arranged a meeting to purchase drugs, specifically, an ounce of marijuana. Defendant then walked toward a nearby apartment (also located in the Steele Boulevard Apartments), while Dean, Caston, Darville, and Chamberlain drove, at defendant's instruction, to a daycare center located in near proximity to Darville's apartment. While the vehicle occupants waited for the defendant, *1139 Dean heard four gunshots. The occupants then observed defendant running and drove closer to him, and defendant entered the vehicle. One of the other occupants asked defendant what had happened, and he responded by saying that "he [presumably the victim] was hiding like a little a girl."
According to Dean, defendant stated that he took a little over five hundred dollars and an unspecified amount of marijuana from the victim. The group then traveled to Geismar, Louisiana. Defendant stated that he needed to dispose of the gun, and at Darville's suggestion, attempted to leave his gun at the home of Darville's cousin. At that point, Dean actually saw the gun. After Darville's cousin refused to allow defendant to leave the gun at his house, defendant stated that he wanted to throw the gun into a body of water. Chamberlain then drove to a levee located in St. Gabriel, Louisiana, where defendant exited the vehicle and threw the gun over the levee. Dean assumed that defendant had thrown the gun in the water.[7]
Caston similarly testified that defendant approached him while he was at Darville's apartment (on the day of the shooting) and asked him to participate in a robbery. Caston inquired as to the amount intended to be stolen, but after being advised that it was about $2,500.00, he rejected defendant's offer. Caston was not acquainted with the victim and did not know whom defendant planned to rob. Caston listened as defendant made a telephone call and negotiated the purchase of an ounce of marijuana. Defendant instructed Chamberlain to drive to the nearby daycare center with the others and to wait for him. Defendant walked to a nearby apartment and sat on some steps.
As the others waited for defendant in the vehicle as instructed, they heard four gunshots. After the shots were fired, defendant jumped over a fence, ran to the car, and entered the car. Defendant instructed Chamberlain to drive away slowly. Defendant, who appeared somewhat nervous, stated that he needed to hide something. The item that defendant made reference to hiding was concealed in a blue "beanie hat." Caston never actually saw a gun but assumed it was the item concealed in the hat. According to Caston, defendant handed a bag of marijuana and an unspecified amount of money to Darville.[8] As they approached Gonzales, Louisiana, defendant stated that he "shot him with four [slugs]." As testified by Dean, Caston testified that they went to Darville's cousin's home in Geismar, and then drove to a body of water. Defendant exited the vehicle and walked to the levee. According to Caston, defendant appeared to wipe something off using his shirt and then threw it into the water.
Unlike Dean and Caston, Darville indicated that defendant did not solicit his participation in a robbery or murder. According to Darville, on the day of the shooting, Chamberlain had agreed to transport Darville and defendant to Houma where they planned to work on a shrimp boat. Darville testified that he believed defendant was going to purchase some marijuana when they left the apartment and that they would then leave for Houma. Darville stated that either Chamberlain or defendant (he could not recall whom) telephoned the victim (identified as the "dude Turner") to arrange the marijuana *1140 purchase. In subsequent testimony, Darville confirmed that defendant stated (before they left the apartment) that he was going to commit a robbery. Defendant pulled up his shirt and displayed a gun carried against his waist.
Darville also heard multiple gunshots as the four vehicle occupants waited for defendant at the nearby daycare center. After defendant entered the vehicle, the group traveled to Geismar. Defendant was then in possession of an unspecified amount of money and marijuana. Because of his own concern about being in proximity to a possible murder weapon, Darville suggested that defendant leave the gun with his (Darville's) cousin. After Darville's cousin refused to keep the gun, the five traveled to "the [Mississippi] river" where defendant stated he intended to dispose of the gun. Defendant exited the automobile, and Darville assumed that defendant then disposed of the gun. Darville explained that because it was dark, he did not actually see defendant dispose of the gun.
In finding the defendant guilty as charged, the trial court, in pertinent part, stated as follows:
And if this were like a lot of drug deals gone bad, this may have a different answer to it and I may have a different solution, or a different verdict, but this just wasn't a drug deal.
* * *
And, like I said, a lot of drug deals, you can look at it and say, well, he didn't mean to kill anybody, but I don't think that was the case here. I think he intentionally got Mr. Turner there for the purpose of the robbery, maybe not to kill him but we'll never know exactly what took place because nobody was there other than Mr. LeBoeuf, who is still alive and could tell us exactly what happened but he didn't testify. Perhaps something could have made me believe that there was a manslaughter there in the verdict, had something come along and been a fight over the drugs, but I don't have any evidence to that affect [sic]. (Emphasis supplied.)
The trial court obviously concluded that the evidence presented herein excluded every reasonable hypothesis of innocence. The trial court further concluded that there was no evidence of manslaughter. We find that the record supports the trial court's conclusions. Defendant failed to establish by a preponderance of the evidence that he acted in "sudden passion" or "heat of blood." Thus, defendant is not entitled to a verdict of manslaughter. The evidence of defendant's statements and actions during the moments leading up to and immediately following the shooting was sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of second degree murder beyond a reasonable doubt. Due to the foregoing conclusions, this assignment of error lacks merit.

PRO SE ASSIGNMENTS OF ERROR
In his first pro se assignment of error, defendant avers that the trial court violated his constitutional right to remain silent when it adversely made reference to his failure to testify. In the second pro se assignment of error, defendant avers that the trial court did not afford him the presumption of innocence, as it made reference to defendant's failure to produce evidence. The statements at issue were made by the trial court after the close of evidence and immediately before it rendered its verdict.
Regarding the first pro se assignment of error, defendant emphasizes the following language of the trial court's oral reasons, *1141 "I think he intentionally got Mr. Turner there for the purpose of the robbery, maybe not to kill him but we'll never know exactly what took place because nobody was there other than Mr. LeBoeuf, who is still alive and could tell us exactly what happened but he didn't testify." (Emphasis supplied.) Defendant notes that he has a constitutional right not to testify in his own defense and argues that the trial court committed reversible error in using defendant's silence as a factor in reaching the verdict.
Louisiana Code of Criminal Procedure article 770 provides when a mistrial should be granted in a jury trial:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
. . .
(3) The failure of the defendant to testify in his own defense . . .
. . .
An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.
Article 770 refers to a remark or comment "made within the hearing of the jury." This was a bench trial. Nevertheless, we note that defendant did not lodge a contemporaneous objection to the trial court's quoted statement or move for a mistrial pursuant to the rationale of article 770(3) or pursuant to article 775, the general provision addressing mistrials in both jury and bench trials. Thus, the issue has not been properly reserved for appellate review. La.C.Cr.P. art. 841.
At any rate, comment on the defendant's failure to take the stand at trial is a trial error, not a structural defect in the proceedings, that has been subject to harmless-error analysis at the federal level since Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). State v. Thomas, 05-2373, p. 1 (La.4/17/06), 926 So.2d 490, 491 (per curiam). In light of the evidence of defendant's guilt, as well as defendant's burden to prove the mitigatory factors supporting manslaughter, we find that the trial court's verdict herein was surely unattributable to any supposed error in this regard. Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993); State v. Sanders, 93-0001, p. 17 (La.11/30/94), 648 So.2d 1272, 1286, cert. denied, 517 U.S. 1246, 116 S.Ct. 2504, 135 L.Ed.2d 194 (1996). Thus, the first pro se assignment of error lacks merit.
In his second pro se assignment of error, defendant quotes the following language: "Perhaps something could have made me believe that there was a manslaughter there in the verdict, had something come along and been a fight over the drugs, but I don't have any evidence to that affect [sic]." Defendant notes that he had no obligation to present evidence. Defendant contends that he rested on the presumption of innocence and held the state to its burden of proof. The defendant argues that the quoted statement demonstrates that trial court failed to afford him Fifth Amendment protections and the presumption of innocence. He concludes that such constitutes an infringement of his fundamental rights and structural reversible error.
Our justice system provides a defendant with a presumption of innocence until proven otherwise. This presumption is fundamental to the fairness that a defendant *1142 is entitled to receive. La. Const. art. I § 16. The principle that there is a presumption of innocence in favor of the accused is the undoubted law axiomatic and elementary; and its enforcement lies at the foundation of the administration of our criminal law. The presumption of innocence is a "conclusion drawn by the law" by which a defendant must be acquitted unless proven to be guilty. Coffin v. U.S., 156 U.S. 432, 458-59, 15 S.Ct. 394, 404, 39 L.Ed. 481 (1895); State v. Hopkins, 39,730, pp. 9-10 (La.App.2d Cir.8/17/05), 908 So.2d 1265, 1273-1274, writ denied, 05-2253 (La.3/17/06), 925 So.2d 541.
Again, we observe that defendant did not lodge a contemporaneous objection to the quoted statement of the trial court; thus, the issue has not been properly reserved for appellate review. La.C.Cr.P. art. 841. Nonetheless, based on our careful review of the record, we disagree with defendant's contention that the trial court did not afford him the presumption of innocence. As previously stated, defendant, rather than the state, had the burden of establishing, by a preponderance of the evidence, that he acted in "sudden passion" or "heat of blood" in order to be entitled to a verdict of manslaughter. The comments referenced above are simply indicative of the trial court's obvious conclusion that defendant failed to meet his burden of proving the mitigating factors. The verdict rendered herein is soundly based on the evidence presented during the trial, which established beyond reasonable doubt that defendant killed the victim with specific intent as part of an armed robbery. Thus, we find no error in this regard. The second pro se assignment of error lacks merit.

SECOND COUNSELED ASSIGNMENT OF ERROR
In the second counseled assignment of error, defendant avers that the trial court failed to properly advise him of the prescriptive period for applying for post conviction relief under La.C.Cr.P. art. 930.8(C). Defendant correctly notes that the two-year period for applying for post conviction relief runs from the date the conviction and sentence become final, not from the date of sentencing.
Here, defendant waived sentencing delays and was immediately sentenced after the verdict was rendered. On October 20, 2005, defendant moved for an appeal. In a subsequent sentencing proceeding on October 25, 2005, the trial court noted its earlier failure to inform defendant of the delays for filing for reconsideration of sentence, for appeal, and for postconviction relief. The trial court then stated to defendant, in pertinent part: "You have thirty days from today's date to ask me to reconsider this sentence. And two years to file any post conviction motions that you want to file."
Louisiana Code of Criminal Procedure article 930.8(C) provides that, at the time of sentencing, the trial court shall inform the defendant of the prescriptive period for applying for post-conviction relief. We agree with defendant's contention that he was not properly advised pursuant to La.C.Cr.P. art. 930.8(C). However, this article contains merely precatory language and does not bestow an enforceable right upon an individual defendant. State ex rel. Glover v. State, 93-2330, 94-2101, 94-2197, p. 21 (La.9/5/95), 660 So.2d 1189, 1201, abrogated in part on other grounds, State ex rel. Olivieri v. State, 00-0172, 00-1767 (La.2/21/01), 779 So.2d 735, cert. denied, 533 U.S. 936, 121 S.Ct. 2566, 150 L.Ed.2d 730 (2001).
While La.C.Cr.P. art. 930.8(C) directs the trial court to inform the defendant of the prescriptive period at the time of sentencing, its failure to do so has no *1143 bearing on the sentence and is not grounds to reverse the sentence or remand the case for resentencing, and the article does not provide a remedy for an individual defendant who is not told of the limitations period. See Glover, 93-2330 at pp. 20-21, 660 So.2d at 1201. Moreover, as the issue has been expressly raised herein, it is obvious that defendant has actual notice and knowledge of the limitation period or has the benefit of an attorney to provide him with such notice. Although we have done so in the past under similar circumstances, we decline to remand for resentencing. State v. Brooks, 40,186, pp. 9-10 (La. App.2d Cir.10/26/05), 914 So.2d 110, 115-116; State v. Dupree, 02-1158, p. 3 (La. App. 4th Cir.10/23/02), 831 So.2d 379, 381. Out of an abundance of caution and in the interest of judicial economy, we instead note for the record and advise defendant that La.C.Cr.P. art. 930.8 generally provides that no application for postconviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence have become final under the provisions of La. C.Cr.P. arts. 914 or 922.
For the foregoing reasons, we affirm both the conviction and sentence of the defendant, Brandon LeBoeuf, with notice to him of the prescriptive or limitations period for seeking post-conviction relief, as stated above.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] In the indictment, defendant's surname was amended by the addition of "a/k/a LeBoef."
[2] Defendant was not rearraigned after the amendment to the indictment. However, La. C.Cr.P. art. 555 provides that "[a] failure to arraign the defendant or the fact that he did not plead, is waived if the defendant enters upon the trial without objecting thereto, and it shall be considered as if he had pleaded not guilty." The record shows that defendant was sufficiently apprised of the charge against him. Defendant does not allege any prejudice resulting from the above omission, nor do we find any indication of same. Thus, the omission was harmless. See also La.C.Cr.P. art. 921.
[3] Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:64(A). First degree robbery differs from armed robbery only in that it applies "when the offender leads the victim to reasonably believe he is armed with a dangerous weapon." La. R.S. 14:64.1(A). The elements of simple robbery are the same as those of armed robbery, except the offender is "not armed with a dangerous weapon." La. R.S. 14:65(A).
[4] The record indicates that Darville shared the apartment with Chris Garafola and that defendant regularly spent nights in the apartment. Garafola was working on the day of the shooting and was not present during any of the significant events culminating in the murder.
[5] According to the testimony presented during the trial, the slang term "lick" is generally defined as a means of financial gain, but may have differing meanings depending upon the circumstances and specific context. In this case, Dean understood it to mean a robbery, although it could also mean to kill. Caston believed the term referred to a robbery.
[6] Three weeks prior to the incident, defendant had discussed the same plans with Dean.
[7] St. Gabriel is a community situated along the Mississippi River in Iberville Parish.
[8] During cross-examination, Caston specified that the defendant had an ounce of marijuana and approximately two hundred dollars in his possession when he entered the vehicle.