# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

# NO. 2023 KA 1223

# STATE OF LOUISIANA

# VERSUS

# MOSES M. EVANS

Judgment Rendered: **JUL 0 2 2024**

\* \* \* \* \* \* \* \*

Appealed from the
19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Case No. DC-19-05971, Section 7

Honorable J. Michael McDonald, Judge Pro Tempore

\* \* \* \* \* \* \* \*

Edward G. Partin, II
Slaughter, Louisiana

Counsel for Defendant/Appellant
Moses M. Evans

Hillar C. Moore, III
District Attorney
Stacy L. Wright
Assistant District Attorney
Baton Rouge, Louisiana

Counsel for Appellee
State of Louisiana

\* \* \* \* \* \* \* \*

**BEFORE: THERIOT, PENZATO, AND GREENE, JJ.**

Theriot, J. Dissents and assigns reasons
Penzato, J. Concurs and assigns reasons

**PENZATO, J.**

The defendant, Moses M. Evans, was charged by amended bill of information with two counts of second degree cruelty to juveniles (counts one and two), violations of La. R.S. 14:93.2.3(A)(1); three counts of aggravated second degree battery (counts three, four, and five), violations of La. R.S. 14:34.7(A); one count of domestic abuse battery by burning (count six), a violation of La. R.S. 14:35.3(A) and (M)(2); and one count of second degree battery (count nine), a violation of La. R.S. 14:34.1(A).[1] The defendant initially pled not guilty on all counts but subsequently changed his pleas to not guilty and not guilty by reason of insanity. The defendant then filed a motion to quash the proceedings based on prescription, which the trial court denied.

Thereafter, on May 1, 2023, the defendant withdrew his not guilty and not guilty by reason of insanity pleas, and pled guilty as charged on all counts pursuant to *State v. Crosby*, 338 So.2d 584 (La. 1976), reserving his right to seek review of the trial court's ruling on his motion to quash. The trial court then sentenced the defendant as follows: for each count of second degree cruelty to juveniles (counts one and two), to twenty years imprisonment at hard labor, fifteen years suspended, and three years probation to begin upon discharge from custody; for each count of aggravated second degree battery (counts three, four, and five), to fifteen years imprisonment at hard labor, ten years suspended, and three years probation to begin upon discharge from custody; for domestic abuse battery by burning (count six), to five years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence; and for second degree battery (count nine), to five years imprisonment at hard labor, with all sentences to be served concurrently. Additionally, on counts one, two, three, four, and five, the trial court ordered the

---

[1] The State also charged the defendant with two counts of cruelty to juveniles (counts seven and eight) but dismissed those charges in accordance with the defendant's guilty plea.

2

defendant to pay $65.00 per month to the Department of Public Safety and Corrections, Division of Probation and Parole, as a condition of his probation.

The defendant now appeals, assigning error to the trial court's denial of his motion to quash. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On September 16, 2019, the State charged the defendant by bill of information with several non-capital felonies, to which he pled not guilty. During a status conference on October 7, 2019, the trial court appointed a sanity commission to determine the defendant's competency to stand trial. The sanity hearing was subsequently conducted over the course of two days, September 22, and 30, 2020, after which the trial court found the defendant did not have the mental capacity to proceed. The defendant was then committed to the Department of Health and Hospitals, reevaluated, and, on May 20, 2021, was deemed competent to stand trial. Thereafter, the trial court set a trial date of November 15, 2021.

Shortly before trial, the defendant filed a motion to continue and a motion to change his plea from not guilty to not guilty and not guilty by reason of insanity, which the trial court denied. The defendant sought supervisory review, which this court granted and then remanded the matter to the trial court to allow the defendant to change his plea. *State v. Evans*, 2021 KW 1396 (La. App. 1st Cir. 11/16/21). Subsequently, on November 16, 2021, the defendant withdrew his not guilty pleas and was rearraigned, after which he entered pleas of not guilty and not guilty by reason of insanity to all charges. He then moved for and was granted a continuance, at which point the trial court reset the trial date to July 11, 2022. Approximately two weeks before the new trial date, the State filed a motion to continue. Over the defendant's objection, the trial court granted the motion and reset the trial date to May 1, 2023. Thereafter, on November 18, 2022, the defendant filed the instant motion to quash.

3

At the hearing on the motion to quash, the defendant argued that because there was no interruption or suspension of the two-year time period after the trial court granted his motion to continue on November 16, 2021, the State had until November 16, 2022, to commence trial but failed to do so. In response, the State argued that there had been a number of suspensions of the two-year time limitation, including the time the defendant was in the custody of the Department of Health and Hospitals, during COVID, and when the defendant changed his plea; therefore, the State argued the motion to quash should be denied. The trial court denied the motion.

## MOTION TO QUASH

In his sole assignment of error, the defendant argues the trial court erred in denying his motion to quash the proceedings. Specifically, he claims his November 16, 2021 motion to continue suspended the time limitation for commencing trial, which then resumed on the same date, giving the State until November 16, 2022, to bring him to trial. Because the State failed to commence trial by that date, the defendant asserts the trial court should have granted his motion to quash.

A motion to quash is the proper procedural vehicle for challenging an untimely commencement of trial. See La. Code Crim. P. art. 532(7). When a trial court denies a motion to quash, factual and credibility determinations should not be reversed in the absence of a clear abuse of the trial court's discretion. However, a trial court's legal findings, such as the ruling on the instant motion to quash, are subject to a *de novo* standard of review. *State v. Reed*, 2016-1201 (La. App. 1st Cir. 4/12/17), 218 So.3d 729, 731.

In a non-capital felony case, the State must commence trial within two years of the date of institution of the prosecution. La. Code Crim. P. art. 578(A)(2). Upon expiration of this time period, the court shall, on motion of the defendant, dismiss the indictment and there shall be no further prosecution against the defendant for that criminal conduct. La. Code Crim. P. art. 581. "Institution of prosecution"

4

includes the filing of a bill of information, which is designed to serve as the basis of a trial. See La. Code Crim. P. art. 934(7); *Reed*, 218 So.3d at 731. Once the defendant shows the State has failed to bring him to trial within the time period specified by Article 578, the State bears a heavy burden of demonstrating that either an interruption or a suspension of the time limit extended the time to commence trial. *State v. Morris*, 99-3235 (La. 2/18/00), 755 So.2d 205, 205 (per curiam).

The time limitation for the commencement of trial shall be interrupted if the defendant cannot be tried because of insanity or because his presence for trial cannot be obtained by legal process, or for any other cause beyond the control of the State. La. Code Crim. P. art. 579(A)(2). The time limitation shall commence to run anew from the date the cause of the interruption no longer exists. La. Code Crim. P. art. 579(B).

Furthermore, when the defendant files a motion to quash or other preliminary plea, the time limitation shall be suspended until the ruling of the court thereon; but in no case shall the State have less than one year after the ruling to commence the trial. La. Code Crim. P. art. 580(A). When the prescriptive period is suspended, the running of the time period resumes when the court rules on the motions. *Reed*, 218 So.3d at 732.

The record reveals the following pertinent timeline:

- September 16, 2019 – State filed bill of information (prescriptive period ends September 16, 2021).

- September 30, 2020 – Defendant found incompetent to proceed (prescription interrupted).

- May 20, 2021 – Defendant found competent to proceed, trial date set for November 15, 2021 (prescriptive period begins anew, ends May 20, 2023).

- November 18, 2022 – Defendant filed instant motion to quash based on prescription (prescription suspended).

- February 7, 2023 – Trial court denied motion to quash (prescriptive period resumes).

5

■ May 1, 2023 – Defendant pled guilty.

Based on the foregoing, it is clear prescription had not run, and the trial court did not err in denying the motion to quash. The State instituted criminal proceedings against the defendant on September 16, 2019, and thus had until September 16, 2021, to commence trial, absent an interruption or suspension of the time period. See La. Code Crim. P. art. 578(A)(2). When the trial court found the defendant incompetent to proceed on September 30, 2020, the time limitation was interrupted. The period of interruption ended and prescription began anew when the defendant was found competent to proceed on May 20, 2021. See La. Code Crim. P. arts. 579(A)(2) and (B). Thus, the State had until at least May 20, 2023, to commence trial against the defendant. Therefore, at the time the defendant filed his motion to quash in November 2022, the State's two-year time limitation for commencement of trial had not yet expired. The trial date of May 1, 2023 was well within the time period for commencing trial.[2] Accordingly, the trial court properly denied the defendant's motion to quash based on prescription. This assignment of error is without merit.

## **PATENT ERROR**

Pursuant to La. Code Crim P. art. 920(2), this court routinely conducts a review of all appeals for error discoverable by mere inspection of the pleadings and proceedings and without inspection of the evidence. *State v. Anthony*, 2023-0117 (La. App. 1st Cir. 11/3/23), 378 So.3d 766, 775, writ denied, 2024-00027 (La. 5/21/24), __ So.3d __, 2024 WL 2284735. After a careful review of the record, we have found two patent errors.

On counts one, two, three, four, and five, the trial court ordered the defendant to serve three years of supervised probation upon his release from custody. In connection with these sentences, the trial court ordered the defendant to pay $65.00

---

[2] In addition, the time period was suspended when the defendant filed the instant motion to quash on November 18, 2022, and resumed on February 7, 2023, when the trial court denied the motion. See La. Code Crim. P. art. 580(A); *Reed*, 218 So.3d at 732.

per month to the Department of Public Safety and Corrections, Division of Probation and Parole, as a condition of his probation.

Louisiana Code of Criminal Procedure art. 875.1 provides:

A. The purpose of imposing financial obligations on an offender who is convicted of a criminal offense is to hold the offender accountable for his action, to compensate victims for any actual pecuniary loss or costs incurred in connection with a criminal prosecution, to defray the cost of court operations, and to provide services to offenders and victims. These financial obligations should not create a barrier to the offender's successful rehabilitation and reentry into society. Financial obligations in excess of what an offender can reasonably pay undermine the primary purpose of the justice system which is to deter criminal behavior and encourage compliance with the law. Financial obligations that cause undue hardship on the offender should be waived, modified, or forgiven. Creating a payment plan for the offender that is based upon the ability to pay, results in financial obligations that the offender is able to comply with and often results in more money collected. Offenders who are consistent in their payments and in good faith try to fulfill their financial obligations should be rewarded for their efforts.

B. For purposes of this Article, "financial obligations" shall include any fine, fee, cost, restitution, or other monetary obligation authorized by this Code or by the Louisiana Revised Statutes of 1950 and imposed upon the defendant as part of a criminal sentence, incarceration, or as a condition of the defendant's release on probation or parole.

C. (1) Notwithstanding any provision of law to the contrary, prior to ordering the imposition or enforcement of any financial obligations as defined by this Article, the court shall conduct a hearing to determine whether payment in full of the aggregate amount of all the financial obligations to be imposed upon the defendant would cause substantial financial hardship to the defendant or his dependents. The court may consider, among other factors, whether any victim of the crime has incurred a substantial financial hardship as a result of the criminal act or acts and whether the defendant is employed. The court may delay the hearing to determine substantial financial hardship for a period not to exceed ninety days, in order to permit either party to submit relevant evidence.

(2) The defendant or the court may waive the judicial determination of a substantial financial hardship required by the provisions of this Paragraph. If the court waives the hearing on its own motion, the court shall provide reasons, entered upon the record, for its determination that the defendant is capable of paying the fines, fees, and penalties imposed without causing a substantial financial hardship.

D. (1) If the court determines that payment in full of the aggregate amount of all financial obligations imposed upon the defendant would cause substantial financial hardship to the defendant or his dependents, the court shall do either of the following:

7

(a) Waive all or any portion of the financial obligations, except as provided in Paragraph E of this Article.

(b) Order a payment plan that requires the defendant to make a monthly payment to fulfill the financial obligations.

(2)(a) The amount of each monthly payment for the payment plan ordered pursuant to the provisions of Subsubparagraph (1)(b) of this Paragraph shall be determined by the court after considering all relevant factors, including but not limited to the defendant's average gross daily income for an eight-hour work day.

(b) If the court has ordered restitution, half of the defendant's monthly payment shall be distributed toward the defendant's restitution obligation.

(c) Except as provided in Paragraph E of this Article, during any periods of unemployment, homelessness, or other circumstances in which the defendant is unable to make the monthly payment, the court or the defendant's probation and parole officer is authorized to impose a payment alternative, including but not limited to substance abuse treatment, education, job training, or community service.

(3) If, after the initial determination of the defendant's ability to fulfill his financial obligations, the defendant's circumstances and ability to pay his financial obligations change, the state, the defendant, or the defendant's attorney may file a motion with the court to reevaluate the defendant's circumstances and determine, in the same manner as the initial determination, whether a modification of the monthly financial obligation imposed pursuant to this Article is appropriate under the circumstances.

E. Notwithstanding any other provision of this Article or any other provision of law to the contrary, a court may not waive nor forgive restitution due to a crime victim unless the victim to whom restitution is due consents to such an action.

F. If, at the termination or end of the defendant's term of supervision, any restitution ordered by the court remains outstanding, the balance of the unpaid restitution shall be reduced to a civil money judgment in favor of the person to whom restitution is owed, which may be enforced in the same manner as provided for the execution of judgments in the Code of Civil Procedure. For any civil money judgment ordered under this Article, the clerk shall send notice of the judgment to the last known address of the person to whom the restitution is ordered to be paid.

G. The provisions of this Article shall apply only to defendants convicted of offenses classified as felonies under applicable law.

H. Notwithstanding any provision of this Article or any other law to the contrary, if the financial obligations imposed upon a defendant would cause substantial financial hardship to the defendant or his dependents, the court shall not order that the defendant be incarcerated for his

inability to meet those financial obligations. This provision shall apply to defendants convicted of traffic offenses, misdemeanor offenses, or felonies under applicable law.

In the present case, the trial court did not conduct a hearing to determine whether the fees would cause substantial financial hardship to the defendant or his dependents, nor did it waive judicial determination of such. Further, the record does not reflect that the defendant expressly waived his right to a hearing.[3]

Not all errors discoverable on the face of the proceedings are reversible errors. Whether a patent error, like other statutory error, requires reversal must be evaluated in light of the potential impact on the fairness of the proceedings. *State v. Charles*, 450 So.2d 1287, 1291 (La. 1984).

In this case, the **sole** financial obligation imposed on the defendant was a monthly supervision fee payable to the Department of Public Safety and Corrections, Division of Probation and Parole, which fee is mandated by La. Code Crim. P. art. 895(A).[4] No other financial obligations were imposed upon the defendant. Thus, there was no need for the trial court to determine whether payment in full of the **aggregate** amount of all the financial obligations would cause substantial financial hardship to the defendant or his dependents.[5] See La. Code Crim P. art. 875.1(C)(1).

---

[3] We note that in this case, the defendant was sentenced pursuant to a plea agreement. In furtherance of the plea agreement, the trial court stated, "he pays $65 a month to the probation and parole department for the cost of his supervision[.]" The defendant did not raise any issue or question the fact that he was placed upon supervised probation following his release from incarceration or the fact that a supervision fee was imposed as a condition of his probation. Moreover, it appears from the Boykin examination that the sentence was tailored to accomplish his release from incarceration and place him under supervised probation.

[4] Louisiana Code of Criminal Procedure art. 895(A) provides in pertinent part, that:

When the court places a defendant on probation, it shall require the defendant to refrain from criminal conduct and to pay a supervision fee to defray the costs of probation supervision, and it may impose any specific conditions reasonably related to his rehabilitation ....

[5] Cf. *State v. Cormier*, 2023-24 (La. App. 3d Cir. 1/4/22), 2023 WL 5950870 (unpublished) (vacating financial obligations consisting of payment to the Department of Probation and Parole to help defray the cost of conducting a presentence investigation, a $60.00 monthly supervision fee, and an $11.00 monthly technology fund fee, which were imposed by the trial court without compliance with La. Code Crim. P. art. 875.1).

In addition, the remedy provided in La. Code Crim P. art. 875.1(D)(1)(b), a monthly payment plan to fulfill the financial obligations, is already in place. Finally, La. Code Crim P. art. 895(D) provides authority for the trial court to order community service in lieu of the fee if the court finds that the defendant is unable to pay the supervision fee. Thus, the trial court's failure to conduct a hearing or waive the judicial determination in accordance with La. Code Crim. P. art. 875.1(C)(1) and (2) did not prejudice the defendant in any way, as the issue of any financial hardship in connection with the monthly supervision fee may still be addressed pursuant to La. Code Crim. P. art. 895(D).[6] Accordingly, any error in the trial court's failure to conduct a hearing or waive the judicial determination in accordance with La. Code Crim. P. art. 875.1(C)(1) and (2) is harmless and does not require a remand for resentencing. See *State v. Dawson*, 2019-1612 (La. App. 1st Cir. 11/17/20), 316 So.3d 77, 90, writ denied, 2021-00217 (La. 5/4/21), 315 So.3d 222.

Additionally, the trial court failed to advise the defendant of the applicable time period to file an application for post-conviction relief.[7] (R. 465-72). At the time of sentencing, the trial court shall inform the defendant of the prescriptive period for applying for post-conviction relief. La. Code Crim. P. art. 930.8; *State v. LeBoeuf*, 2006-0153 (La. App. 1st Cir. 9/15/06), 943 So.2d 1134, 1142, writ denied, 2006-2621 (La. 8/15/07), 961 So.2d 1158. Its failure to do so, however, has no bearing on the sentence and is not grounds to reverse the sentence or remand for resentencing. Further, La. Code Crim. P. art. 930.8 does not provide a remedy for

---

[6] Additionally, La. Code Crim P. art. 875.1(D)(2)(c) authorizes the court or the defendant's probation and parole officer to impose a payment alternative, including but not limited to substance abuse treatment, education, job training, or community service during any periods of unemployment, homelessness, or other circumstances in which the defendant is unable to make the monthly payment.

[7] The minutes reflect that, on counts six and nine, the trial court advised the defendant of the applicable time period. However, the transcript reveals the trial court failed to do so on any count. When there is a discrepancy between the minutes and the transcript, the transcript prevails. *State v. Lynch*, 441 So.2d 732, 734 (La. 1983).

10

an individual defendant who is not told of the limitations period. *LeBoeuf*, 943 So.2d at 1142-43.

Out of an abundance of caution and in the interest of judicial economy, we advise the defendant that La. Code Crim. P. art. 930.8 generally provides that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if filed more than two years after the judgment of conviction and sentence have become final under the provisions of La. Code Crim. P. arts. 914 or 922. *LeBoeuf*, 943 So.2d at 1143.

**AFFIRMED.**

**STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT**

**DOCKET NUMBER
2023 KA 1223**

**STATE OF LOUISIANA
VERSUS
MOSES M. EVANS**

**GREENE, J., concurring.**

I respectfully concur because I think the defendant waived his right to an La. C.Cr.P. art. 875.1 hearing. Further, even if such a hearing was required, I agree that the trial court's failure to conduct the hearing was harmless error.

I acknowledge that, notwithstanding any other law to the contrary, La. C.Cr.P. art. 875.1(C)(1) requires the trial court to conduct a hearing prior to ordering the imposition or enforcement of any financial obligation. However, La. C.Cr.P. art. 875.1(C)(2) allows the trial court or the defendant to waive the judicial determination of a substantial financial hardship – the trial court's waiver must be with reasons and entered upon the record, whereas a defendant's waiver has no similar requirements.[1]

In this case the defendant was sentenced pursuant to a plea agreement. In furtherance of the plea agreement, the trial court stated "he pays $65 a month to the probation and parole department for the cost of the supervision." The defendant did not challenge the fact that he was placed upon supervised probation following his release from incarceration or the fact that a supervision fee was imposed as a condition of his probation. In fact, it was clear from the *Boykin* examination that the sentence was tailored to accomplish his release from incarceration and place him under supervised probation. Thus, I consider defendant's actions to be a waiver of any hearing required by La. C.Cr.P. art. 875.1(C)(1).

Further, I agree that the trial court's failure to conduct a hearing under La. C.Cr.P. art. 875.1 was harmless error, because the issue of any financial hardship in connection with the monthly supervision fee may still be addressed under La. C.Cr.P. art. 895(D).

---

[1] Notably, under the version of La. C.Cr.P. art. 875.1(C)(2) in effect before August 1, 2022, a defendant could not waive the hearing.

# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## NO. 2023 KA 1223

## STATE OF LOUISIANA

## VERSUS

## MOSES M. EVANS

**THERIOT, J., dissenting in part and assigning reasons.**

I respectfully dissent from the majority's ruling finding the trial court's failure to conduct the required hearing under La. Code Crim. P. art. 875.1 harmless error and declining to remand to the trial court for such a hearing.

On May 1, 2023, when the defendant was sentenced, the trial court ordered the defendant to serve three years of supervised probation upon his release from custody on each of counts one, two, three, four, and five. In connection with these sentences, the trial court ordered the defendant to pay a $65.00 monthly supervision fee to the Department of Public Safety and Corrections, Division of Probation and Parole, as a condition of his probation. The trial court did not conduct a hearing under La. Code Crim. P. art. 875.1 before imposing the fee.

The current version of Article 875.1 became effective on August 1, 2022. See 2022 La. Acts No. 219, § 1. Subsection (C)(1) provides that prior to imposing any financial obligations, the trial court shall conduct a hearing to determine whether payment in full of the aggregate amount of all the financial obligations to be imposed upon the defendant would cause substantial financial hardship to the defendant or his dependents. Prior to its amendment by Act 219, Article 875.1(C) did not state the trial court must hold a hearing to make such a determination. See 2018 La. Acts

No. 668, § 1. By adding the words "conduct a hearing[,]" to the statute, it appears the legislature's intent was to ensure trial courts conduct a hearing prior to imposing any financial obligations upon a defendant.

A "financial obligation" is pertinently defined as "*any* fine, fee, cost, restitution, or other monetary obligation *authorized by this Code* or by the Louisiana Revised Statutes of 1950 and imposed upon the defendant as part of . . . the defendant's release on probation or parole." La. Code Crim. P. art. 875.1(B) (emphasis added). Herein, during the sentencing hearing, the trial court imposed the monthly supervision fee as a mandatory condition of the defendant's probation. See La. Code Crim. P. art. 895(A). The defendant was on notice of the condition of his probation and was aware of what must be paid during his probation to avoid revocation. The defendant did not object to or question the fee. Nevertheless, under the plain language of the statute, the trial court was required to conduct a hearing prior to imposing the fee, even though it was mandatory and authorized by the Code of Criminal Procedure. See La. Code Crim. P. art. 875.1(B); **State v. Cormier**, 2023-24 (La. App. 3d Cir. 9/13/23), 2023 WL 5950870, *8-9 (unpublished) (court vacated mandatory fees, including Article 895(A) supervision fee, imposed as conditions of probation and remanded for Article 875.1 hearing despite defendant's notice of conditions, where trial court failed to conduct hearing prior to imposing fees).

The defendant or the court may waive the judicial determination of a substantial financial hardship. La. Code Crim. P. art. 875.1(C)(2). However, if the trial court waives the hearing on its own motion, it must provide reasons on the record for its determination the defendant is capable of paying the financial obligation imposed without causing a substantial financial hardship. **Id.** In the instant case, neither the trial court nor the defendant waived judicial determination of whether a substantial financial hardship existed.

2

The majority appears to assert in a footnote that the defendant implicitly waived his right to the hearing, as he was sentenced pursuant to a plea agreement. Article 875.1(G) states the Article applies to "defendants *convicted* of offenses classified as felonies." (Emphasis added). "Convicted" means adjudicated guilty after a plea or after trial on the merits. La. Code Crim. P. art. 934(3). Thus, the defendant's guilty plea does not remove the requirement for a hearing under Article 875.1(C). See **State v. Gant**, 54,837 (La. App. 2d Cir. 1/11/23), 354 So.3d 824, 832 (although defendant entered guilty plea, court vacated financial obligations and remanded for Article 875.1 hearing). Further, Article 875.1(A) enacts the policy that financial obligations should not create a barrier to the offender's successful rehabilitation and reentry into society. Although the Article does not require a defendant's waiver to be made on the record, as it does for the trial court, an implied waiver by a defendant would be contrary to the stated purpose of the Article, which is to deter criminal behavior and encourage compliance with the law. See La. Code Crim. P. art. 875.1(A); **State v. Tucker**, 2022-735 (La. App. 3d Cir. 5/31/23), 368 So.3d 187, 201.

The majority contends the trial court's failure to hold a hearing was harmless error because the defendant was not prejudiced "in any way," as the trial court may later address the issue of financial hardship under Article 895(D). Under Article 895(D), the trial court may order community service in lieu of the fee if it determines the defendant is unable to pay the supervision fee. Notably, the trial court must still *determine* the defendant is unable to pay the fee. The trial court in this case made no such determination. Further, Article 895(D) does not displace the requirement of a hearing under Article 875.1. Article 875.1(D)(3) provides that if the defendant's circumstances and ability to pay his financial obligations change, the trial court may reevaluate the defendant's circumstances and determine whether a modification of the monthly financial obligation is appropriate. Thus, the trial court is still required

3

to determine the defendant's ability to fulfill his financial obligations under Article 875.1.

The 2022 amendment to Article 875.1 specifically added the requirement that the trial court must conduct a hearing prior to imposing *any* financial obligation upon the defendant. The amendment reflects the legislature's most recent articulation of its intent with respect to how the trial court should impose fees and fines upon a defendant. Therefore, based on the trial court's failure to comply with the statute, I would vacate the monthly supervision fee and remand to the trial court for the limited purpose of conducting a hearing in compliance with Article 875.1. <u>See</u> **Cormier**, 2023 WL 5950870, at \*9; **Tucker**, 368 So.3d at 202; **Gant**, 354 So.3d at 832.

4