STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2024 KA 0369

STATE OF LOUISIANA

VERSUS

JAYDEN VONGCHANH

Judgment Rendered: __DEC 2 7 2024__

* * * * *

On Appeal from the
16th Judicial District Court
In and for the Parish of St. Mary
State of Louisiana
Trial Court No. 2023212306

Honorable Curtis Sigur, Judge Presiding

* * * * *

M. Bofill Duhé                          Attorneys for Appellee,
District Attorney                       State of Louisiana
W. Claire Howington
Assistant District Attorney
New Iberia, LA

Walter J. Senette, Jr.
Assistant District Attorney
Franklin, LA

Gwendolyn K. Brown                      Attorney for Defendant-Appellant,
Baton Rouge, LA                         Jayden Vongchanh

* * * * *

BEFORE: THERIOT, CHUTZ, AND HESTER, JJ.

**HESTER, J.**

The defendant, Jayden Vongchanh, was charged by grand jury indictment as an adult with second degree murder, in violation of La. R.S. 14:30.1.[1] The defendant pled not guilty to the charge. Following a trial by jury, he was found guilty of the responsive offense of manslaughter.[2] See La. R.S. 14:31. Following a sentencing hearing, the trial court imposed a sentence of forty years imprisonment at hard labor. The defendant filed a motion to reconsider sentence, which the trial court denied without a hearing. The defendant now appeals, alleging the trial court erred by imposing an excessive sentence. For the reasons that follow, we affirm the conviction and sentence.

## FACTS

On the night of December 12, 2020, Liam McDuff, the victim, attended a party hosted by his neighbor, Christopher Landry. The party was held in a two-story barn on Landry's father's property in Iberia Parish. The lower level of the barn had a big open arena with stalls and storage, and the second level had a loft. Around 1:00 a.m., a girl approached Landry and informed him that people were throwing beer bottles on them from the balcony. Landry grabbed a friend and went upstairs to the second level, where he observed a group of about seven to nine people, which included the defendant. He instructed the defendant's group to leave his property and escorted them down the stairs and out of the front of the barn.

As Landry walked the defendant's group to their cars, several of Landry's friends began walking with him. There was some distance between the two groups, and nobody pushed, touched, or threatened the group being escorted out, but Landry

---

[1] The defendant, whose date of birth is September 29, 2005, was fifteen years old at the time of the offense.

[2] The defendant's first trial, which was held in Iberia Parish, ended with a hung jury. Thereafter, the trial court granted the defense's motion for change of venue and the case was moved to St. Mary Parish.

2

acknowledged his group was probably saying things like "get the hell out of here." The driver got into the car and did not get back out. However, the defendant got into the front passenger side of the vehicle, then stepped out and leaned his body over the roof of the car and swept the crowd from right to left with a gun. As soon as the defendant swept back, he pulled the trigger and shot Liam in the chest. The defendant and his friends fled the scene in their car, and Landry called 911. Liam, the nineteen-year-old victim who was unarmed, died.

Misty Montgomery, a detective with the Iberia Parish Sheriff's Office, was dispatched to investigate the shooting. After obtaining a video from a witness who attended the party, Detective Montgomery identified some of the individuals who were in the defendant's group, including Billy Moreau and Richard Perez. After Moreau was interviewed, she learned the other individuals in the group were Nathan Matula, another male named "Von," Jared Boudreaux, and Brian Vegas Martinez. Detective Montgomery subsequently learned that "Von" was the defendant, Jayden Vongchanh, and several witnesses picked him out of a photo lineup and identified him as the individual who had shot Liam. A warrant was issued for the defendant, and he was subsequently arrested. The defendant did not testify at trial.

## ASSIGNMENT OF ERRORS

The defendant argues the trial court erred by imposing an excessive sentence. Specifically, the defendant alleges the trial court failed to adequately consider the Article 894.1 factors when tailoring his sentence. As such, he submits the trial court erred by denying his motion to reconsider sentence. The assignments of error are interrelated and are addressed together. The State argues the defendant's sentence is not excessive and asserts the trial court gave detailed and thoughtful reasons for the sentence. The State notes that because the defendant was a juvenile at the time of the offense, he will be eligible for parole consideration after serving twenty-five years of his sentence pursuant to La. R.S. 15:574.4(J).

3

The Eighth Amendment to the United States Constitution and Article I, § 20, of the Louisiana Constitution prohibit the imposition of cruel or excessive punishment. Although a sentence falls within statutory limits, it may be excessive. See **State v. Sepulvado**, 367 So.2d 762, 767 (La. 1979). A sentence is considered constitutionally excessive if it is grossly disproportionate to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. **State v. Shaikh**, 2016-0750 (La. 10/18/17), 236 So.3d 1206, 1209 (*per curiam*). A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks one's sense of justice. **State v. Livous**, 2018-0016 (La. App. 1st Cir. 9/24/18), 259 So.3d 1036, 1044, writ denied, 2018-1788 (La. 4/15/19), 267 So.3d 1130.

The trial court has great discretion in imposing a sentence within the statutory limits, and such a sentence will not be set aside as excessive in the absence of an abuse of discretion. **State v. Scott**, 2017-0209 (La. App. 1st Cir. 9/15/17), 228 So.3d 207, 211, writ denied, 2017-1743 (La. 8/31/18), 251 So.3d 410. Louisiana Code of Criminal Procedure article 894.1 sets forth the factors for the trial court to consider before imposing sentence. While the entire checklist of Article 894.1 need not be recited, the record must reflect the trial court adequately considered the criteria. See **State v. Brown**, 2002-2231 (La. App. 1st Cir. 5/9/03), 849 So.2d 566, 569. A review for individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. **Brown**, 849 So.2d at 569.

The articulation of the factual basis for a sentence is the goal of Article 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with Article 894.1. **State v. Lanclos**, 419 So.2d 475, 478 (La. 1982); **Scott**, 228 So.3d at 211. The trial court's

4

considerations should be based upon factual determinations and include a review of the defendant's personal history, his prior criminal record, the seriousness of the offense, the likelihood that he will commit another crime, and his potential for rehabilitation through correctional services other than confinement. See **State v. Jones**, 398 So.2d 1049, 1051-52 (La. 1981); **State v. Spikes**, 2017-0087 (La. App. 1st Cir. 9/15/17), 228 So.3d 201, 204-05. On appellate review of a sentence, the relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. **State v. Thomas**, 98-1144 (La. 10/9/98), 719 So.2d 49, 50 (*per curiam*); **State v. Anderson**, 2022-0587 (La. App. 1st Cir. 12/22/22), 357 So.3d 845, 852, writ denied, 2023-00352 (La. 9/6/23), 369 So.3d 1267.

Louisiana Revised Statutes 14:31(B) provides: "[w]hoever commits manslaughter shall be imprisoned at hard labor for not more than forty years." Here, the trial court imposed the maximum sentence of forty years, which is within the statutory limits. Prior to sentencing the defendant, the trial court heard impact statements from the victim's father Jim McDuff, who testified regarding how this crime has affected him and his family.[3] Mr. McDuff testified his son was the light of their family, that he was so full of life and very fun. He said with his son gone, it has been terrible, "[w]e have just been decimated." Mr. McDuff asked the trial court to impose a forty-year sentence and requested that the court run the sentence consecutive to the defendant's sentences for his convictions in two other, unrelated cases.[4] Alice McDuff, the victim's mother, also made a statement. She said her son was loved by everybody, and she described the effect his death has had on his family

---

[3] Mr. McDuff indicated his son was a sophomore at LSU and had made the honor roll all three semesters, an accomplishment of which his son was very proud. On the night of the shooting, he and his wife were summoned to the hospital at 2:00 a.m., but due to COVID, they had to wait outside and were unable to see their son before he died.

[4] As noted later in this opinion, the defendant had two other felony convictions for which he was sentenced to terms of imprisonment.

and friends, especially the friends that witnessed his death. She said it has been terrible dealing with her son's death. Leon J. Minville, III, a lifelong friend of the McDuffs, discussed what a wonderful person Liam was and said his death has been a crushing blow to the McDuffs. He asked the court to impose the maximum sentence.

At the sentencing hearing, the defendant apologized to the victim's family for the pain he caused them and asked for forgiveness. He asked the court to give him a second chance. After the impact statements, the trial court reviewed the facts of the case and noted it was not necessary for the defendant to shoot an unarmed man. The court stated: "I strongly believe that [the defendant] was somewhat trigger happy, and was looking for a reason to shoot someone." The court noted that it was only after the defendant fired the bullet into the victim's chest that he and his friends got into the car and fled the scene. The court found if they were able to leave after the shooting, they could have left before the victim was shot. The court also found that when the defendant shot the victim, he put the lives of other individuals in jeopardy, as the bullet could have hit someone else.

The court noted that after Liam was shot, and while he was lying in the hospital where they were trying to save his life, the defendant posted a photo of himself smoking something with two handguns on his lap, under the caption: "Smoking on dead op. Laughed my A off. Life is hard." The trial court learned the caption meant smoking on a "dead opponent." The trial court said this photo spoke a thousand words and showed the defendant had no remorse for having killed someone. The only mitigating factor the trial court found was the defendant's age.

The record reflects the trial court took the Article 894.1 factors into consideration when imposing the sentence in this case. Specifically, the trial court noted it believed there is an undue risk that during the period of a suspended sentence or probation the defendant will commit another crime and he needs correctional

6

treatment or a custodial environment that can be provided most effectively by his commitment to an institution. The trial court found a lesser sentence would deprecate the seriousness of the defendant's crime. The trial court further noted the defendant: (1) knowingly created a risk of death or great bodily harm to more than one person, (2) used actual violence in the commission of the offense, (3) used a dangerous weapon in the commission of the offense, and (4) that his conduct during the commission of the offense manifested deliberate cruelty to the victim.

The trial court reviewed the results of the presentence investigation report and found very troubling the defendant's criminal history, which included three juvenile convictions for crimes of violence.[5] Specifically, he was convicted of first degree robbery of a fellow student at New Iberia Senior High School and was sentenced to three years at hard labor. The defendant used a knife to commit the robbery. Following the death of Liam, the defendant was convicted of second degree battery, and he was sentenced to one year imprisonment. The battery occurred at the juvenile facility where he was being housed. Additionally, the court noted the defendant had other arrests for which there were no convictions, including curfew violations, theft of a cell phone, and simple burglary during which some weapons were taken.

Maximum sentences may be imposed for the most serious offenses and the worst offenders, or when the offender poses an unusual risk to the public safety due to his past conduct of repeated criminality. **State v. Albarado**, 2003-2504 (La. App. 1st Cir. 6/25/04), 878 So.2d 849, 852, writ denied, 2004-2231 (La. 1/28/05), 893 So.2d 70. The trial court stated it strongly believed the defendant is a danger to society and our community. In its reasons for sentencing the defendant, the trial court fully considered the Article 894.1 factors, the seriousness and nature of the crime, and the defendant's background. The record provides sufficient justification

---

[5] The results of the presentence investigation report were placed under seal.

for the imposition of the sentence. Given the foregoing, we find no abuse of discretion by the trial court in sentencing the defendant to the maximum sentence of forty years. Accordingly, the sentence imposed is not grossly disproportionate to the severity of the offense and, therefore, is not unconstitutionally excessive. Thus, the trial court did not err by denying the motion to reconsider sentence. These assignments of error are without merit.

## PATENT ERROR

Pursuant to La. Code Crim. P. art. 920(2), this court routinely conducts a review of all appeals for error discoverable by mere inspection of the pleadings and proceedings and without inspection of the evidence. **State v. Anthony**, 2023-0117 (La. App. 1st Cir. 11/3/23), 378 So.3d 766, 775, writ denied, 2024-00027 (La. 5/21/24), 385 So.3d 242. After a careful review of the record, we have found one patent error. The record reflects the trial court advised the defendant: "you have a period of two years to file for post-conviction relief, and that two year period begins to run when your sentence becomes final."

A defendant generally has two years after the "judgment of conviction and sentence" has become final to seek post-conviction relief. La. Code Crim. P. art. 930.8(A). Thus, the trial court provided incomplete advice regarding the prescriptive period for seeking post-conviction relief. However, the trial court's failure to properly advise the defendant has no bearing on the sentence and is not grounds to reverse the sentence or remand for resentencing. See **State v. LeBoeuf**, 2006-0153 (La. App. 1st Cir. 9/15/06), 943 So.2d 1134, 1142-43, writ denied, 2006-2621 (La. 8/15/07), 961 So.2d 1158. Accordingly, this error is not reversible, and we decline to remand for resentencing.

Out of an abundance of caution and in the interest of judicial economy, we advise the defendant that La. Code Crim. P. art. 930.8(A) generally provides no application for post-conviction relief, including applications which seek an out-of-

8

time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. Code Crim. P. arts. 914 or 922. **LeBoeuf**, 943 So.2d at 1143.

**CONVICTION AND SENTENCE AFFIRMED.**