STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2024 KA 0196

STATE OF LOUISIANA

VERSUS

DANIEL LEE WIGGINS

JUDGMENT RENDERED:  FEB 2 8 2025

* * * * * * *

Appealed from the 21st Judicial District Court
Parish of Livingston • State of Louisiana
Docket Number 42210 • Division C

The Honorable Erika Sledge, Presiding Judge

* * * * * * *

<table>
<tr><td>Scott M. Perrilloux<br>District Attorney<br>Amite, LA<br><br>Brett Sommer<br>Assistant District Attorney<br>Livingston, LA</td><td>COUNSEL FOR APPELLEE<br>PLAINTIFF—State of Louisiana</td></tr>
<tr><td>Jane C. Hogan<br>Hammond, LA</td><td>COUNSEL FOR APPELLANT<br>DEFENDANT—Daniel Lee Wiggins</td></tr>
</table>

* * * * * * *

**BEFORE: MCCLENDON, C.J., LANIER AND BALFOUR, JJ.**

**BALFOUR, J.**

The defendant, Daniel Lee Wiggins, was charged by bill of information with molestation of a juvenile where the incidents of molestation recurred during a period of more than one year, in violation of La. R.S. 14:81.2(A)(1) and (C)(1). The defendant pled not guilty and following a jury trial, he was found guilty as charged. The defendant filed a motion for new trial and motion for post-verdict judgment of acquittal, which the trial court denied. Following a sentencing hearing, the trial court imposed forty years imprisonment at hard labor and ordered the first five years to be served without benefit of probation, parole, or suspension of sentence. The defendant now appeals. For the following reasons, we affirm the conviction and sentence.

## FACTS

The victim, M.M., was the niece of the defendant's wife.[1] M.M. would often visit the defendant and his wife's home, so that she could spend time with M.M.'s cousins. In 2019, M.M. and her mother moved in with an aunt, who lived near the defendant and his wife. During that time, her mother noticed that M.M. seemed sad and withdrawn. Her aunt demanded to see her cell phone. When her mother and aunt looked through M.M.'s cell phone they discovered messages between M.M. and the defendant that were "a little disturbing." When they confronted M.M., she started crying and stated the defendant had been physically touching and hurting her for years. Her mother contacted the sheriff's office and turned over M.M.'s cellphone to law enforcement. At the time, M.M. was sixteen years old. Following an investigation, the defendant was arrested, tried by jury, convicted and sentenced.

---

[1] Initials are being used to protect the identity of the minors in this case. *See* La. R.S. 46:1844(W)(3).

## LAW AND ARGUMENT

In his first assignment of error, the defendant argues there is insufficient evidence to support the molestation of a juvenile conviction. A conviction based on insufficient evidence cannot stand, as it violates due process. *See* U.S. Const. amend. XIV, La. Const. art. I, § 2.[2] The constitutional standard for testing the sufficiency of the evidence, as enunciated in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and adopted by the Louisiana Legislature in enacting La. Code Crim. P. art. 821, requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. The *Jackson* standard of review is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the trier of fact must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. *State v. Delco*, 2006-0504 (La. App. 1st Cir. 09/15/06), 943 So. 2d 1143, 1146, *writ denied*, 2006-2636 (La. 08/15/07), 961 So. 2d 1160.

When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. *State v. Coleman*, 2021-0870 (La. App. 1st Cir. 04/08/22), 342 So. 3d 7, 12, *writ denied*, 2022-00759 (La. 11/21/23), 373 So. 3d 460. When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis

---

[2] The question of the sufficiency of the evidence is properly raised by a motion for post-verdict judgment of acquittal. *See* La. Code Crim. P. art. 821.

of innocence presented by the defense, that hypothesis falls and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. *State v. Bessie*, 2021-1117 (La. App. 1st Cir. 04/08/22), 342 So. 3d 17, 22, *writ denied*, 2022-00846 (La. 09/20/22), 346 So. 3d 802.

Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile. Lack of knowledge of the juvenile's age is not a defense. La. R.S. 14:81.2(A)(1). The Louisiana Supreme Court has defined "lewd and lascivious conduct" very broadly, as any conduct that is "lustful, obscene, indecent, tending to deprave the morals in respect to sexual relations, and relating to the sexual impurity or incontinence carried on in a wanton manner." *See State v. Jones*, 2010-0762 (La. 09/07/11), 74 So. 3d 197, 204. *See also State v. Boudreaux*, 2023-0993 (La. App. 1st Cir. 04/19/24), 390 So. 3d 345, 354, *writ denied*, 2024-00695 (La. 1/28/25), ___ So. 3d ___.

In order to commit molestation of a juvenile, the offender must possess the specific intent of arousing or gratifying the sexual desires of himself or the child upon whose person he committed a lewd or lascivious act or in whose presence he committed such an act. *State v. Smith*, 2022-0231 (La. App. 1st Cir. 11/4/22), 354 So. 3d 697, 701. However, specific intent need not be proven as a fact. It may be inferred from the circumstances of the transaction and the actions of the defendant. *State v. McKinney*, 2015-1503 (La. App. 1st Cir. 04/25/16), 194 So. 3d 699, 703, *writ denied*, 2016-0992 (La. 05/12/17), 220 So. 3d 747.

4

In order to convict an accused of molestation of a juvenile, the State must prove beyond a reasonable doubt that the defendant (1) was over the age of 17 and more than two years older than the victim; (2) committed a lewd or lascivious act upon the person or in the presence of any child under the age of 17; (3) had the specific intent to arouse or gratify the sexual desires of himself or the victim; and (4) committed the act by use of force, duress, psychological intimidation or by the use of influence by virtue of a position of control or supervision over the juvenile. *See State v. Lambert*, 2016-0344 (La. App. 1st Cir. 09/20/16), 277 So. 3d 383, 388. *See also State v. Coffey*, 54,729 (La. App. 2d Cir. 09/21/22), 349 So. 3d 647, 653, *writ denied,* 2022-01574 (La. 12/20/22), 352 So. 3d 89. The jurisprudence has interpreted the "supervision and control" element of molestation of a juvenile to be satisfied by someone who has emotional control over the victim, as well as by someone who is a live-in boyfriend, non-custodial parent, babysitter, relative, friend, pastor, and neighbor. *State v. Roy*, 2015-515 (La. App. 3d Cir. 11/04/15), 177 So. 3d 1103, 1109, *writ denied*, 2020-00179 (La. 07/17/20), 298 So. 3d 177.

In 2016, at the age of 12, M.M. often stayed overnight at the defendant's house during the weekend, so that she could spend time with them. At the time of trial, M.M. was nineteen years old. Initially, M.M.'s relationship with the defendant consisted of hanging out, talking, and riding four-wheelers, but she indicated things changed. The defendant started trying to get closer to her and "hugging up" on her. M.M. recalled the first time the defendant gave her alcohol, made her drink, and then had her sit on his lap. M.M. testified, "I was a little too drunk to be able to comprehend anything, and he brought me to the bedroom, threw me on the bed and he didn't get off." M.M. further testified that although she did not want to, she and the defendant had sex. The next morning, the defendant took her to purchase Plan

5

B[3] and made her take it. She noted the sexual contact between her and the defendant occurred frequently when her aunt was at work.

When M.M.'s family moved, she lived with the defendant's family to finish school. M.M. testified that the defendant continued to have sexual contact with her and it occurred repeatedly. She again noted the defendant would give her alcohol, and then they would have sex. She stated, "it was kind of constant." M.M. testified she no longer tried to scream because she did not feel like there was any point since the defendant was "six-foot man, 400 something pounds".

M.M. stated that the defendant had gifts delivered to her aunt's home, and he sent her money via Cash App or Facebook Pay. She used the money to buy clothes and shoes. M.M. testified that she and the defendant communicated through Facebook and Snapchat from 2016 through 2020. According to M.M., prior to when her mother and aunt went through her phone, the defendant sent her videos on Snapchat with him holding a gun to his head, crying, and threatening to kill himself and stating it was all her fault. This caused her to become upset and depressed. M.M. acknowledged that she did not speak much during the forensic interview. She testified that her trial testimony is more accurate because she had matured since the time it all "started coming out."

On cross-examination, M.M. explained she was not in the right state of mind, noting after experiencing years of trauma that it was hard to explain to a complete stranger everything that happened to her. M.M. testified that due to the built up trauma, she does not remember the exact details. According to M.M., law enforcement insisted she write letters regarding the relationship. As a result, her account of events in the letters she wrote was not necessarily accurate. She was

---

[3] Plan B is an over the counter emergency contraceptive pill taken after unprotected sex to prevent pregnancy.

nervous and scared the defendant was going to come after her again. She stated: "I didn't want to necessarily dog the crap out of him because I was scared of him."

When asked why she stayed with defendant's family when hers had moved, M.M. stated that she really loved softball and wanted to stay to finish out the school year and the softball season, and her parents allowed this. She further stated that she was with her cousins and she just wanted to be with her family. According to M.M., she did not have anybody else. M.M. testified the reason she did not tell her parents about the sexual abuse is because the defendant threatened her all the time. She explained that "[H]e kept me quiet by buying me stuff or threatening me." She further stated, "If I was to tell, I was a goner, my family a goner."

In October of 2020, Christine Roy from Child Advocacy Services, conducted a forensic interview of M.M. At trial, Roy indicated that in cases of accidental disclosure, such as the instant one, it is not uncommon for the victim to be less willing to talk. M.M.'s trial testimony was more detailed than her statements during the CAC interview.

M.M.'s mother, C.M., testified that the defendant is married to her husband's sister. She noted when their family moved to Livingston Parish, M.M. would stay overnight at the defendant's home. C.M. indicated when she moved away, she allowed her daughter to stay with her aunt and the defendant because she was into sports and played softball year round. C.M. further testified that she observed a change in M.M.'s behavior in October 2020. This behavior is what led her to look at M.M.'s phone. When she saw the defendant's picture, his name, and conversations that mentioned his wife and children, C.M. called the sheriff's office. M.M.'s paternal grandmother, Denise Broussard, testified that in August or September of 2020, M.M. came to her crying and asked her to purchase a pregnancy test. Broussard indicated she purchased two tests and both were negative. On cross-

examination, Broussard testified the defendant told her he was the one who had encouraged M.M. to buy the pregnancy test.

Captain Carl Coxe with the Livingston Parish Sheriff's Office Digital Forensic Department, was accepted by the trial court as an expert in digital forensics and cell phone extraction without objection. Captain Coxe testified that he participated in the investigation of the defendant by extracting files from M.M.'s cell phone using software.[4] He observed numerous screen captions of conversations between M.M. and the defendant from Facebook Messenger that he tagged. He printed their tagged Facebook conversations. Captain Coxe testified the readable format is a true, and accurate representation of the messages that he extracted from M.M.'s cell phone, and had not been altered in any manner. Captain Coxe indicated that during the extraction, he found evidence that over 35,000 messages had been deleted. However, he could not determine the identities of the participants in the deleted messages. He noted his findings in a summary report. At trial, Captain Coxe read fifteen-and-one-half pages of messages the defendant had sent to M.M on October 11, 2020. On re-direct examination, regarding the defendant's Facebook account, Captain Coxe noted the defendant sent a selfie of himself to M.M.'s phone.

The defendant testified on his own behalf at trial, noting he was forty-one years old and that he had worked as a riverboat captain for the past twenty-three years.[5] M.M. would come to visit his family in Livingston Parish. The defendant denied that he gave M.M. alcohol, and he denied the allegations of sexual misconduct. He indicated the gifts he bought for M.M. were basic necessities, such as a sweater to keep warm, a backpack and a lunch box for school, and COVID masks. He admitted that he gave her one hundred dollars, contending it was for her

---

[4] Captain Coxe used software known as "GrayKey," to perform a full file system extraction and "Cellebrite" to analyze the information and to make reports.

[5] The defendant indicated his date of birth is May 4, 1982.

to buy food for herself and her family. He further admitted that he bought her a used iPhone for her birthday.

The defendant offered an explanation for the messages he exchanged with M.M. in October of 2020. He agreed their communications appeared to be conversations between two people who were in some type of romantic relationship. He explained that M.M. had lied to him about being raped, which made him upset. He noted that he stayed up for two days crying because he thought somebody had hurt her. The defendant further explained when she finally came clean about the rape allegations not being true, he did not want anything to do with her, and he noted in their subsequent online conversations that he was pushing her away. The defendant indicated that M.M. thought she was pregnant and asked him to buy her a pregnancy test. He told her to talk to somebody about it and suggested her grandmother purchase a pregnancy test. The defendant testified that he never threatened M.M., and he viewed himself as an uncle, a friend, and a father to her. The defendant further testified that on more than one occasion, M.M. was suicidal.

On cross-examination, the defendant was asked to explain what role he was filling by sending messages to M.M. threatening to kill himself. He indicated those were sent as a friend who was upset with her after finding out she had lied to him about being raped. The defendant admitted that in subsequent messages he was having suicidal thoughts and trying to make M.M. upset.

The defendant explained that he and M.M. had a very close friendship, while acknowledging that he was forty-one and she was only fifteen or sixteen years old. He further acknowledged that during this time, he was still married and had children. The defendant answered in the affirmative when he was asked if it upset him that she had sex with somebody else. On redirect examination, the defendant stated he did not regret sending the messages he wrote or becoming close with M.M. because he alleged she was suicidal a lot of times and barely holding on.

The defendant argues on appeal that his conviction should be vacated because it is based entirely on M.M.'s evolving and inconsistent statements, and a series of text messages which do not prove that any sexual contact occurred. He further points to his wife's testimony, wherein she indicated she did not work. He contends that evaluating this evidence in the light most favorable to the State, there is simply insufficient evidence to sustain his conviction.

The State responds that in addition to the direct evidence provided by M.M., there was also compelling evidence detailed in the communications between the defendant and M.M. At trial, M.M. acknowledged the discrepancy between her CAC interview and her trial testimony and explained that she did not talk as much at the interview as she did at trial. She further testified that after experiencing years of trauma, it was hard to explain to a complete stranger everything that happened to her. Furthermore, Roy, the CAC interviewer, indicated that in cases of accidental disclosure, such as the instant one, it is not uncommon for the victim to be less willing to talk to her.

The jury heard the testimony and viewed the evidence presented at trial and found the defendant guilty as charged. The trier of fact makes credibility determinations and may, within the bounds of rationality, accept or reject the testimony of any witness. *State v. Higgins*, 2003-1980 (La. 04/01/05), 898 So. 2d 1219, 1232, *cert. denied*, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005). The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. *State v. Jenkins*, 357 So. 3d 840, 844 (La. App. 1st Cir. 12/22/22).

Here, M.M.'s trial testimony revealed that she visited the defendant's home to spend time with her cousins. At that time, M.M. was twelve years old, and the

10

defendant was thirty-five years old. M.M.'s testimony established the defendant gave her alcohol, rubbed on her leg, kissed her, and had sexual intercourse with her. The defendant was often alone at home with M.M. while his wife was at work. Her testimony established that after she began living in the defendant's home to finish out the school year, the sexual contact continued. M.M.'s testimony indicating she was having sexual intercourse with the defendant, who was thirty-seven at the time, was sufficient to prove beyond a reasonable doubt that he committed a lewd or lascivious act upon her when she was under the age of seventeen. She testified, and the defendant admitted, that they constantly communicated with each other through Facebook Messenger. M.M.'s testimony demonstrated the defendant kept her quiet and exercised control over her by buying her gifts and giving her money.

This Court reviewed a similar case, where the defendant challenged the sufficiency of a molestation of a juvenile conviction. At the time of the offenses, the defendant in *Boudreaux* was forty-six years old, and the victim was fourteen years old. The defendant was the victim's stepfather, and had continuous influence, control, and supervision over her. *See Boudreaux*, 390 So. 3d at 354. The defendant was at home with the victim every day while her mother was at work. At trial, the victim's testimony and CAC statements established that the defendant and the victim exchanged sexually explicit messages and photographs. This Court found that a rational jury could have concluded the defendant was guilty of molestation of a juvenile. *Id.* at 354-55.

Here, the defendant's testimony and his numerous Facebook messages established that he was involved in a sexual relationship with M.M., who was under the age of seventeen. M.M. had the defendant saved in her Snapchat as "Daniel," but noted he changed it to "best friend" or "my forever." At trial, she identified several messages she and the defendant exchanged on Snapchat. According to M.M., the defendant was talking about him taking her virginity when he stated: "I

was your first. There wasn't anyone before me. These are facts." Over the years, the defendant would send pictures of himself to her. M.M. further testified that the defendant told her that he wanted to have a child with her and proclaimed they were going to name the child "Oakley," a name he knew from previous conversations that she really loved. According to M.M., the defendant sent her videos on Snapchat with him holding a gun to his head, crying, and threatening to kill himself and stating it was all her fault. This caused her to become upset and depressed, and she could not eat, take a bath, or do anything.

At trial, the defendant attempted to explain his inappropriate messages by noting he was filling the role of a friend and a father-figure. The defendant admitted the thought of M.M. having sex with someone else made him upset, but contended he was not jealous. Factors including the defendant's living in the home with the victim, acting as a father-figure to the victim, and exercising emotional control over the victim have been found to be sufficient evidence to support a jury's finding of the use of influence by virtue of a position supervision or control. *See Roy*, 177 So. 3d at 1111.

An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the factfinder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. *See State v. Calloway*, 2007-2306 (La. 01/21/09), 1 So. 3d 417, 418 (*per curiam*). After a thorough review of the record, we find the evidence supports the jury's verdict. Viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt all the elements of molestation of a juvenile, and to the exclusion of every reasonable hypothesis of innocence put forth by the defendant. This assignment of error is without merit.

In his second assignment of error, the defendant argues the trial court abused its discretion when it allowed the State to introduce at trial evidence of other bad acts. The defendant contends the State's case relied heavily upon evidence of prior acts that allegedly occurred in Calcasieu Parish, for which he was separately prosecuted.[6] The defendant argues because that prosecution was pending at the time of the underlying trial, he is presumed innocent and the threshold for admissibility of the other acts could not be met. The State argues the other crimes evidence fits squarely within the confines of La. Code Evid. art. 412, and that it is *res gestae*. The State further argues this issue is not preserved for review because the defendant failed to object to the introduction of other crimes evidence.

In his motion for discovery filed February 3, 2021, the defendant requested notice of the State's intention to use other crimes evidence. On October 12, 2023, about two months before trial, the State filed a notice of intent to offer evidence of similar crimes, wrongs, or acts under La. Code Evid. art. 412.2. The defendant did not file a motion in limine seeking to specifically exclude the evidence at issue or an answer to the State's notice of intent.[7] The record shows that prior to jury selection, the trial court noted on the record that the State had filed a notice of intent to use other crimes evidence and that it would allow the State to introduce such evidence pursuant to Article 403, without the necessity of a hearing. The defense did not object to the trial court's ruling.

To preserve the right to appeal the introduction of testimony, the defendant must make a timely objection and state the specific grounds of objection. La. Code Evid. art. 103(A)(1); La. Code Crim. P. art. 841; *State v. Sosa*, 328 So.2d 889, 892

---

[6] In a footnote, defense counsel indicated that on January 29, 2024, the defendant pled guilty to sexual battery in Calcasieu Parish and was sentenced to thirty years imprisonment and that sentence was to be served concurrently with the sentence in this case.

[7] While defense counsel did file a motion in limine, he did not specifically seek to exclude Article 412.2 evidence. Instead, he sought to limit the State from introducing screen shots of SnapChat conversations between the victim and the defendant.

(La. 1976); *State v. Dilosa*, 2001-0024 (La. App. 1st Cir. 5/9/03), 849 So.2d 657, 671, *writ denied*, 2003-1601 (La. 12/12/03), 860 So.2d 1153. The purpose of the contemporaneous objection rule is to allow the trial judge the opportunity to rule on the objection and thereby prevent or cure an error. *State v. Hilton*, 99-1239 (La. App. 1st Cir. 03/31/00), 764 So. 2d 1027, 1035, *writ denied*, 2000-0958 (La. 03/09/01), 786 So. 2d 113. Since the issue was not preserved, the assignment of error is without merit.

In his third assignment of error, the defendant argues the trial court erred in allowing him to be tried by a six-person jury where he faced a mandatory minimum sentence of five years imprisonment without benefits. He further argues the language in the penalty statute, La. R.S. 14:81.2(C)(1), is contradictory and asserts that any ambiguity should be resolved in his favor.

The sentencing guidelines for molestation of a juvenile are contained at La. R.S. 14:81.2(C) which provides:

> Whoever commits the crime of molestation of a juvenile by violating the provisions of Paragraph (A)(1) of this Section, when the incidents of molestation recur during a period of more than one year, shall, on first conviction, be fined not more than ten thousand dollars or imprisoned, **with or without hard labor**, for not less than five nor more than forty years, or both. At least five years of the sentence imposed shall be without benefit of parole, probation, or suspension of sentence.

(Emphasis added.)

The number of persons required to compose a jury in a criminal case is dictated by La. Const. art. I § 17(A) which, in pertinent part, provides:

> A case in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict. **A case in which the punishment may be confinement at hard labor or confinement without hard labor for more than six months shall be tried before a jury of six persons, all of whom must concur to render a verdict.**[8]

---

[8] We note that the underlying offenses began in 2017. Defendant sets forth the amended version of La. Const. art. I, § 17, which did not become effective until December 12, 2018 (2018 La. Acts No. 722, § 1). Nevertheless, the law did not change regarding the jury composition as it relates to

14

(Emphasis added.) Further, "[c]ases in which the punishment may be confinement at hard labor shall be tried by a jury composed of six jurors, all of whom must concur to render a verdict." La. Code Crim. P. art. 782(A). Additionally, we note that "the Sixth Amendment rights, as applied to the States through the Fourteenth Amendment, [are] not violated by [a state's] decision to provide a six-man rather than a 12-man jury." *Williams v. Florida*, 399 U.S. 78, 103, 90 S.Ct. 1893, 1907, 26 L.Ed.2d 446 (1970).

The bill of information sets the parameters and dictates the mode of trial. *State v. Dahlem*, 2014-1555 (La. 03/15/16), 197 So. 3d 676, 683. It is clear that the offense of molestation of a juvenile carries a penalty which may be imposed with or without hard labor and therefore "may be tried only by a six-member jury." *State v. Peace*, 33,719 (La. App. 2d Cir. 08/23/00), 766 So. 2d 630, 632. The defendant raised this issue in a pre-trial motion. Following a hearing, the trial court agreed with the State's argument that molestation of a juvenile is a relative felony that shall be tried by a six-person jury. Here, based upon the information on the face of the bill of information, the defendant was properly tried before a six-person jury. A person convicted of molestation of a juvenile may or may not be punished by confinement at hard labor. Accordingly, this assignment lacks merit.

In his fourth assignment of error, the defendant argues the trial court erroneously denied his motion in limine and permitted the introduction of unauthenticated Snapchat messages allegedly exchanged between him and M.M. Questions of relevancy and admissibility of evidence are within the discretion of the trial court. Such determination regarding relevancy and admissibility should not be

offenses in this case. The bill of information sets the parameters and dictates the mode of trial. *State v. Dahlem*, 2014-1555 (La. 03/15/16), 197 So. 3d 676, 683.

15

overturned absent a clear abuse of discretion. *See State v. Mosby*, 595 So. 2d 1135, 1139 (La. 1992).

The requirement of authentication as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. *See* La. Code Evid. art. 901(A). Authentication is a process whereby something is shown to be what it purports to be. *State v. Magee*, 2011-0574 (La. 09/28/12), 103 So. 3d 285, 315, *cert. denied*, 571 U.S. 830, 134 S.Ct. 56, 187 L.Ed.2d 49 (2013). The testimony of a witness with personal knowledge that a matter is what it is claimed to be is one example of authentication or identification conforming with the requirements of Article 901. *See* La. Code Evid. art. 901(B)(1). Another example is the identification of appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances. *See* La. Code Evid. art. 901(B)(4); *State v. Rice*, 2017-0446 (La. 06/29/17), 222 So. 3d 32, 33 (*per curiam*). Ultimately, a chain of custody or connexity of the physical evidence is a factual matter to be determined by the jury. *State v. Dillon*, 2018-0027 (La. App. 1st Cir. 09/21/18), 2018 WL 4520463, *7.

In his brief, the defendant argues that M.M. could not articulate the source of the screenshot of the Snapchat messages. He indicates the Snapchat exchange is not dated and there was no other corroborating evidence of reliability; thus, the defendant contends the exchange is between M.M. and someone else with the user name "My Forever." The defendant further argues the State failed to prove he is the user, and points out that M.M. had a boyfriend at the time of his arrest.

The record reflects that the trial court held a hearing on the defendant's motion in limine. At the hearing, and at trial, M.M. testified she and the defendant communicated with each other through Facebook and indicated they had used Snapchat to communicate for many years. She testified the defendant sent her pictures of himself via Snapchat. M.M.'s testimony confirmed that the messages

16

she was shown at trial were from a conversation between herself and the defendant and that they had not been altered. M.M. indicated the defendant was saved in her Snapchat as "Daniel," but he changed it to "Best friend" and later to "My Forever."

In *State v. Jones*, 2015-1931 (La. App. 1st Cir. 06/29/16), 2016 WL 3569911 (unpublished), this Court considered the authentication of Facebook messages, sent by the defendant to his domestic abuse victim. The defendant claimed that the messages were not sent through an account he created, the victim did not know the date the messages were sent, and he could not be identified as the sender. *Id.* at *2. The trial court ultimately ruled it would allow the evidence where the victim's testimony reflects she identified the Facebook messages that were from the defendant. The trial court also pointed out that the victim indicated the messages came from the account that was used by the defendant. *Id.* at *3. This Court found no error or abuse of discretion in the trial court's ruling that the messages were admissible. *Id.* at *6. *Cf. State v Dillon*, 2018-0027 (La. App. 1st Cir. 09/21/18), 2018 WL 4520463, *8 (unpublished) (this Court found no error or abuse of discretion in the trial court's ruling that the Facebook message was inadmissible because the defendant provided no evidence to substantiate the authenticity of the Facebook message).

In the case at bar, we find the State presented sufficient testimony from M.M. to allow the jury to conclude the defendant sent her the Facebook and Snapchat messages. Further, the jury found that there was a connexity of physical molestation, with the physical evidence and the social media messages. Accordingly, the trial court did not abuse its discretion in finding the messages were authenticated and, thus, admissible. This assignment of error is without merit.

In his fifth assignment of error, the defendant argues the trial court erred by imposing an unconstitutionally excessive sentence on a first offender. He specifically alleges the trial court erred when it refused to adequately consider the

17

sentencing and mitigating factors of La. Code Crim. P. art. 894.1. The record reflects that the defendant made an oral objection to the maximum sentence, which constituted an oral motion to reconsider sentence made at the time of sentencing. Accordingly, the defendant's claim of constitutional excessiveness was preserved for review. *See State v. Mims*, 619 So. 2d 1059 (La. 1993) *(per curiam)*.

The Eighth Amendment to the United States Constitution and Article I, § 20, of the Louisiana Constitution prohibit the imposition of cruel or excessive punishment. A sentence is considered constitutionally excessive if it is grossly disproportionate to the seriousness of the offense or is nothing more than a purposeless and needless infliction of pain and suffering. *State v. Shaikh*, 2016-0750 (La. 10/18/17), 236 So. 3d 1206, 1209 *(per curiam)*. *See also State v. Livous*, 2018-0016 (La. App. 1st Cir. 09/24/18), 259 So. 3d 1036, 1044, *writ denied*, 2018-1788 (La. 04/15/19), 267 So. 3d 1130.

The trial court has great discretion in imposing a sentence within the statutory limits, and such a sentence will not be set aside as excessive in the absence of an abuse of discretion. *State v. Scott*, 2017-0209 (La. App. 1st Cir. 09/15/17), 228 So. 3d 207, 211, *writ denied*, 2017-1743 (La. 08/31/18), 251 So. 3d 410. Article 894.1 sets forth the factors for the trial court to consider before imposing sentence. While the entire checklist of Article 894.1 need not be recited, the record must reflect the trial court adequately considered the criteria. *State v. Brown*, 2002-2231 (La. App. 1st Cir. 05/09/03), 849 So. 2d 566, 569. A review for individual excessiveness should consider the circumstances of the crime and the trial court's stated reasons and factual basis for its sentencing decision. *Id.*

On appellate review of a sentence, the relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Thomas*, 98-1144 (La. 10/9/98), 719 So. 2d 49, 50 *(per curiam)*; *State v. Anderson*, 2022-0587 (La. App. 1st Cir. 12/22/22), 357 So.

3d 845, 852, *writ denied*, 2023-00352 (La. 09/06/23), 369 So. 3d 1267. Louisiana Revised Statutes 14:81.2(C)(1), in pertinent part, provides:

> Whoever commits the crime of molestation of a juvenile by violating the provisions of Paragraph (A)(1) of this Section, when the incidents of molestation recur during a period of more than one year, shall, on first conviction, be fined not more than ten thousand dollars or imprisoned, with or without hard labor, for not less than five nor more than forty years, or both. At least five years of the sentence imposed shall be without benefit of parole, probation, or suspension of sentence.

Here, the trial court imposed forty years imprisonment at hard labor and ordered the first five years to be served without benefit of probation, parole, or suspension of sentence. Prior to sentencing the defendant, the trial court heard from the victim's mother who asked that the court impose the maximum sentence. The court noted it considered the evidence submitted at trial, the unanimous jury verdict, and the Article 894.1 sentencing guidelines in its decision to impose a forty-year sentence. The record is clear that the defendant used his position of trust and authority to gain emotional control and establish a relationship with M.M. He began his sexual contact with a pre-teenager while she visited the defendant's children, her cousins, in his home. He continued their relationship over a four-year period until it was discovered. Before being exposed, the defendant hid his crimes by forcing M.M. to hide their relationship, take the Plan B pill, and by giving her gifts and money.

After a thorough review of the record, and based on the trial court's reasoning, we find the trial court did not abuse its broad discretion in imposing the maximum sentence for the defendant's conviction. The sentence imposed was not grossly disproportionate to the severity of the offense and was within the statutory guidelines. Thus, it is not unconstitutionally excessive. This assignment of error is without merit.

## PATENT ERROR

Pursuant to La. Code Crim. P. art. 920(2), this Court routinely conducts a review of all appeals for error discoverable by mere inspection of the pleadings and proceedings and without inspection of the evidence. *State v. Anthony*, 2023-0117 (La. App. 1st Cir. 11/03/23), 378 So. 3d 766, 775, *writ denied*, 2024-00027 (La. 5/21/24), 385 So. 3d 242. After a careful review of the record, we have found one patent error. The record reflects the trial court advised the defendant: "You have … two years to file for post-conviction relief."

A defendant generally has two years after the judgment of conviction and sentence have become final to seek post-conviction relief. *See* La. Code Crim. P. art. 930.8(A). Thus, the trial court provided incomplete advice regarding the prescriptive period for seeking post-conviction relief. However, the trial court's failure to properly advise the defendant has no bearing on the sentence and is not grounds to reverse the sentence or remand for resentencing. *See State v. LeBoeuf*, 2006-0153 (La. App. 1st Cir. 09/15/06), 943 So. 2d 1134, 1142-43, *writ denied*, 2006-2621 (La. 08/15/07), 961 So. 2d 1158. Accordingly, this error is not reversible, and we decline to remand for resentencing.

Out of an abundance of caution and in the interest of judicial economy, we advise the defendant that La. Code Crim. P. art. 930.8(A) generally provides that no application for postconviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence have become final under the provisions of La. Code Crim. P. arts. 914 or 922. *LeBoeuf*, 943 So. 2d at 1143.

**CONVICTION AND SENTENCE AFFIRMED.**