# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 25-629

**STATE OF LOUISIANA**

**VERSUS**

**SAMMY CHEATHAM**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 2023-CR-1114
HONORABLE KEITH RAYNE JULES COMEAUX, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## WILBUR L. STILES
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, Jonathan W. Perry, and Wilbur L. Stiles, Judges.

**AFFIRMED.**

**Joshua S. Guillory**
**Attorney at Law**
**203 West Brentwood Boulevard, Suite 3**
**Lafayette, LA 70506**
**(337) 233-1303**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Sammy Cheatham**

**M. Michael Haik, III**
**District Attorney**
**16th Judicial District**
**David H. Pipes**
**Assistant District Attorney**
**300 Iberia Street, Suite 200**
**New Iberia, LA 70560**
**(337) 369-4420**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**STILES, Judge.**

Defendant Sammy Cheatham was charged on December 1, 2023, by bill of information with seven counts of principal to attempted first degree murder, in violation of La.R.S. 14:27 and La.R.S. 14:30(A)(1). He was further charged with one count of illegal use of weapons or dangerous instrumentalities, in violation of La.R.S. 14:94(A), and one count of illegal possession of a handgun by a juvenile, in violation of La.R.S. 14:95.8(A). On February 18, 2025, Defendant pled guilty to seven counts of the amended charge of attempted second degree murder, in violation of La.R.S. 14:27 and 14:30.1. The other two charges were dismissed. On May 20, 2025, Defendant was sentenced to serve thirty years on each count, without benefit of parole, probation, or suspension of sentence. The sentences were ordered to run concurrently with each other. Defendant now appeals his sentences.

## FACTS

On the night of July 15, 2023, the New Iberia Police Department responded to a call regarding a shooting on School Street in New Iberia. A three-year-old girl had been shot in the head while playing inside of her home by someone driving by in a vehicle. The child was rushed to the hospital, where she underwent surgery on her brain. There were six other people inside the house at the time of the shooting. The investigation revealed that Defendant had been riding around in a vehicle that night with two friends. Defendant, who was in the backseat of the vehicle, was identified as the shooter. Videos retrieved from Defendant's cell phone during the investigation showed approximately six shots being fired at the house on School Street through the open window of the vehicle as it drove by. It further showed Defendant shooting at the house a second time after the vehicle had turned around at the dead end and was leaving the neighborhood. Through the videos and text

messages retrieved from the participants' phones, it was made clear that the house with the three-year-old child inside was not the intended target. Instead, Defendant and his friends had intended to shoot up the house of someone named "Pop."

As there were seven people inside of the house at the time Defendant fired the shots, he was charged with seven counts of principal to attempted first degree murder, as well as the two weapons charges. The attempted first degree murder charges were later reduced to seven counts of attempted second degree murder, in violation of La.R.S. 14:27 and La. R.S. 14:30.1, to which Defendant pled guilty on February 18, 2025. The two weapons charges were dismissed as part of Defendant's plea agreement. On May 20, 2025, the trial court sentenced Defendant to thirty years at hard labor on each of the seven counts of attempted second degree murder. Those sentences were ordered to be served without parole, probation, or suspension of sentence, and were further ordered to run concurrently with each other.

Defendant has appealed his sentences.

## ASSIGNMENTS OF ERROR

On appeal, Defendant asserts two assignments of error:

1. The trial court imposed a sentence that is constitutionally excessive in violation of La.Const. art. I, § 20 and the Eighth Amendment to the United States Constitution.

2. The trial court failed to give adequate consideration to the defendant's youth, mental-health background, and capacity for rehabilitation as required by *Miller v. Alabama*, 567 U.S. 460 (2012), *Jones v. Mississippi*, 593 U.S. [98] (2021), and related Louisiana jurisprudence.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors parent on the face of the record. After reviewing the record, we have

found one error patent. Defendant was not fully informed by the trial court of the time period for filing an application for post-conviction relief.

At the guilty plea proceeding, the trial court advised Defendant:

> The law requires that I tell you there's a two-year limitation to file for post-conviction relief if you think any State or Federal or constitutional right has been violated. You have two years to complain about it. I'll explain more after I sentence you because it doesn't take effect until after sentencing. Okay?

However, there is no indication in the sentencing transcript that this was further discussed.

Louisiana Code of Criminal Procedure Article 930.8 states, in pertinent part, "No application for post conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of Article 914 or 922[.]" Recently, in *State v. Terry*, 25-170, pp. 3–4 (La.App. 3 Cir. 11/19/25), 425 So.3d 188, 191, this court discussed its adoption of a new procedure, allowing the opinion of an appellate court to provide a defendant with notice of the correct time period for filing an application for post-conviction relief:

> Recently, a majority of this court's judges have chosen to allow the appellate opinion to serve as notice of the time limitation for filing an application for post conviction relief. *See State v. King*, 24-367 (La.App. 3 Cir. 2/19/25), 405 So.3d 1162, *writ denied*, 25-381 (La. 5/20/25), 409 So.3d 223; *State v. Washington*, 24-308 (La.App. 3 Cir. 2/12/25), 406 So.3d 579; *State v. Mason*, 24-407 (La.App. 3 Cir. 2/5/25), 407 So.3d 822, *writ denied*, 25-270 (La. 4/29/25), 407 So.3d 620.
>
> In *Washington*, 406 So.3d at 583 (alterations in original), this court stated:
>
> > We agree with the first, second, and fifth circuits who have allowed their opinions to serve as notice to Defendant of the correct time limitation for filing an application for post-conviction relief:

Finally, after the trial court imposed the sentences herein, it failed to advise the defendant of the applicable time period to file an application for post-conviction relief.... At the time of sentencing, the trial court shall inform the defendant of the prescriptive period for applying for post-conviction relief. **State v. LeBoeuf**, 2006-0153 (La.App. 1st Cir. 9/15/06), 943 So.2d 1134, 1142, <u>writ denied</u>, 2006-2621 (La. 8/15/07), 961 So.2d 1158. Its failure to do so, however, has no bearing on the sentence and is not grounds to reverse the sentence or remand for resentencing. Further, the Article does not provide a remedy for an individual defendant who is not told of the limitations period. **Id**. at 1142-43.

Out of an abundance of caution and in the interest of judicial economy, we advise the defendant that La.Code Crim.P. art. 930.8 generally provides that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if filed more than two years after the judgment of conviction and sentence has become final under the provisions of La.Code Crim.P. arts. 914 or 922. **Id**. at 1143.

*State v. Folse*, 23-1299, p. 11 (La.App. 1 Cir. 9/20/24), 405 So.3d 645, 654. Accordingly, Defendant is advised that pursuant to La.Code Crim.P. art. 930.8, no application for post-conviction relief, including applications seeking an out-of-time appeal, shall be considered if filed more than two years after the judgment of conviction and sentence has become final under La.Code Crim.P. arts. 914 or 922.

Thus, this opinion will serve as notice to Defendant of the proper time period for filing post conviction relief.

Accordingly, we advise Defendant that no application for post-conviction relief, including applications for out-of-time appeal, shall be considered if filed more than two years after the judgment of his convictions and sentences have become final under La.Code Crim.P. arts. 914 or 922.

4

## ASSIGNMENTS OF ERROR NUMBERS ONE AND TWO

In Defendant's first assignment of error, he argues, "The trial court imposed a sentence that is constitutionally excessive in violation of [Louisiana Constitution Article] I, §20 and the Eighth Amendment to the United States Constitution." In his second assignment of error, Defendant argues, "The trial court failed to give adequate consideration to Defendant's youth, mental-health background, and capacity for rehabilitation as required by *Miller v. Alabama*, 567 U.S. 460[, 132 S.Ct. 2455] (2012), *Jones v. Mississippi*, 593 U.S. [98, 141 S.Ct. 1307)] (2021), and Louisiana jurisprudence." Defendant asserts that his first assignment of error addresses the proportionality of his sentences, while his second assignment of error concerns a separate constitutional error in the sentencing process itself.

As noted by the State in its brief, Defendant did not file a motion for reconsideration of his sentence or object to his sentence at the sentencing hearing. Ordinarily, the failure to file a motion to reconsider sentence precludes review of the sentence on appeal. La.Code Crim.P. art. 881.1(E). However, this court has chosen to review sentencing claims for bare excessiveness when no motion to reconsider was filed. *See State v. Thomas*, 08-1358 (La.App. 3 Cir. 5/6/09), 18 So.3d 127. Thus, we will review Defendant's arguments as a bare claim of excessiveness.

In *State v. Doyle*, 23-696, pp. 42–43 (La.App. 3 Cir. 5/22/24), 388 So.3d 1226, 1252 (alterations in original), this court laid out guidelines regarding excessive sentence review:

> The standard of review for excessive-sentence claims was addressed in *State v. Barling*, 00-1241, 00-1591 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331. There, this court explained:
>
> > La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment."

To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.

*Id*. at 1042 (citations omitted).

In *State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061, we further explained:

In deciding whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La. 7/6/00), 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir. 1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La. 5/31/96), 674 So.2d 957, 958.

Louisiana Code of Criminal Procedure 881.4(D) states that "[t]he appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed." To this end, La.Code Crim.P. art. 894.1 enumerates aggravating and mitigating factors to be considered by the trial court in imposing a sentence. In relevant part, it provides that the trial court "shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence." La.Code Crim.P. art. 894.1(C). "While the judge need not articulate every aggravating and mitigating circumstance outlined in [La.Code Crim.P.] art. 894.1, the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant." *State v. Smith*, 433 So.2d 688, 698 (La.1983).

The penalty for second degree murder is provided in La.R.S. 14:30.1(B): "Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence." The pertinent penalty provision for attempt provides, "If the offense so attempted is punishable by death or life imprisonment, he shall be imprisoned at hard labor for not less than ten nor more than fifty years without benefit of parole, probation, or suspension of sentence." La.R.S. 14:27(D)(1)(a). Thus, Defendant faced a sentence between ten and fifty years at hard labor for each conviction.

The trial court gave lengthy reasons when sentencing Defendant, noting that it "is governed by Article 894 of the Code of Criminal Procedure in this matter as to the sentencing guidelines that the Court has to used [sic] in determining the appropriate sentence." When addressing those sentencing guidelines, the trial court first discussed those "which favor the Defendant."

> The first thing that the Court notes is Mr. Cheatham was seventeen years old at the time of the offense. He suffered from ADHD and has initially been diagnosed with bipolar disorder, but the doctor in her report indicates that he doesn't suffer from a bipolar disorder but only ADHD and some drug use.[1] Let's see how Dr. Deland describes it. Diagnostic impressions are attention deficit hyperactive disorder, unspecified mood disorder, rule out bipolar disorder, rule out disruptive mood dysregulation disorder, anxiolytic use disorder and [cannabis] use disorder. So he had known drug use and he had ADHD, and he had another disorder that was described by Dr. Deland, unspecified mood disorder. He was raised in a home and had several problems with his mother and would bounce around by different - - according to Dr. Deland was moved several times based on problems he may have had either with - - within the family unit or outside of the family unit. Additionally, he went to the Youth Challenge Program, a program this Court is familiar with having done juveniles, and graduated from that program but did not receive his GED as a result of that program because of alleged fights within the program.

---

[1] Defendant's trial attorney requested an evaluation of Defendant's mental health history, which was conducted by Dr. Sarah DeLand prior to sentencing. A report dated May 20, 2025, was filed into the record at the sentencing hearing.

Next, the trial court noted Defendant's previous criminal history as a juvenile, as provided in the pre-sentence investigation report.

> The Court finds that he has a previous criminal history as a juvenile. It has been provided in the pre-sentence investigation, and it shows that Mr. Cheatham was previously convicted - - pled guilty to unauthorized entry of an inhabited dwelling in New Iberia City Court, which is a felony, on January 5th of 2021. Additionally, he was also - - pled guilty to aggravated assault with a firearm on December 1st of 2023. So those are two previous criminal offenses that the child - - the young man committed while he was a juvenile. And he was placed on probation. And then, I think, referred to the Youth Challenge Program.

The trial court then stated that "[t]he other significant factors are all aggravating circumstances," and that there were "no other mitigating circumstances which would apply in this case."

> As pointed out by the prosecutor[,] the Court is mindful of the aggravating circumstances and finds the following[:] the offenders [sic] conduct manifested cruelty to the victim. She was shot in the head and had to undergo brain surgery, and the Court does not have a whole lot of information on her condition today but significant brain surgery where fragments of the bond and/or the bullet were removed from her brain. The offender knew or should have known that the victim was particularly vulnerable and incapable of resistance because of extreme youth. I mean, she is a three year-old, you know. You don't shoot into a home of people and expect nothing bad to happen. The offender offered or had been offered or given anything of value. That's not applicable. Knowingly created the risk of death or great bodily harm to more than one person. He pled guilty to seven counts. There were seven people in that home. All seven of them could have been injured or killed but for the grace of God no one died. Otherwise, you might be facing a first degree murder charge and possible death penalty. He was seventeen at the time. He wouldn't have gotten the death penalty, but he would have been looking at life imprisonment without benefit of probation, parole, or suspension of sentence. He used - - the offender used threats of or actual violence in the commission of the offense. He shot a firearm as I counted four or five the first time and once the second time. The offense resulted in a significant permanent injury or a significant economic loss to the victim or his family.

In order to demonstrate how much of an emotional and economic impact this shooting made on the family of the three-year-old child, the trial court read directly

from a statement given by the child's father and recorded in the pre-sentence investigation report.

> Your honor, thank you for giving me the opportunity to speak. My life changed forever the day my three year-old daughter was shot in the head. That moment shattered our world. We were told she might not survive, and for weeks we lived minute by minute terrified of what the next moment would bring. She underwent brain surgery and had to relearn how to walk, talk and perform even the most basic tasks. Watching my baby suffer through that, kind of, pain and struggle is something I wouldn't wish on anyone. No parent should ever have to witness their child endure that. I had to leave my job for several months to care for her full-time. I stayed by her side in the hospital, took her to every therapy session, and helped her relearn everything she had already learned in her short life. The emotional and financial strain was unimaginable, but nothing mattered more than helping her heal. By the grace of God she survived. She is doing well now, and I am beyond grateful for that. But we are not the same. She is not the same. She still carries the trauma of what happened even at such a young age. Loud noises scare her. She has nightmares. She clings to me in ways she never used to. I worry every day about how this trauma will affect her as she grows; her confidence, her education, and her ability to feel safe in the world. Every time we leave the house I am anxious. I find myself replaying the day it happened wondering if I would have done anything differently. I struggle with guilt and the weight of knowing how close I came to losing her. Parenting after this has meant living in survival mode. Financially we are still trying to recover. I lost months of income. Therapy costs and all of the expenses that come from caring for a recovering child have added up quickly. I may need to step away from work again in the future depending on how her healing continues. Anytime she goes back to the hospital we have to travel to Baton Rouge and pay for a hotel while taking off of work. This past month, April, she has had two seizures. She had them a lot since the accident. What happened to us was not just an accident. It was a devastating, life altering event. And while she may have recovered for the most part emotionally we are still healing. I ask that you take into account everything my daughter and our family has endured because of this. We are still living the consequences every day. I hope that whatever sentence is given reflects the seriousness of what happened and brings a sense of justice not just for my daughter but for all families who have been affected by violence like this. Thank you for hearing my story and for considering the impact this has had on our lives.

The trial court then concluded his reasons by turning back to the guidelines of La.Code Crim.P. art. 894.1:

I'm in agreement with the State of Louisiana that the seriousness of this offense is outlined in the first three paragraphs of Article 894.1 that there's an [undue] risk that during the period of a suspended sentence of probation the Defendant will commit another crime. It's very clear that since the age of approximately sixteen he's committed crimes, and but for the fact that he was either in some, type of, custody or some, type of, program he has not stopped committing crimes. The Defendant is in need of correctional treatment and/or a custodial environment that can be provided most effectively by the commitment to an institution and a lesser sentence would [deprecate] the seriousness of Defendant's conduct. The Court has considered all of these factors and on each of the counts of Attempted Second Degree Murder the Court will impose a thirty year sentence. Those sentences are to run concurrently with each other and the Defendant will be given credit for all time served. The Defendant is remanded to the custody of the Sheriff for the execution of said sentence.

After reviewing the record, we agree with the trial court's reasons for sentencing Defendant to thirty years at hard labor on each count of attempted second degree murder. The trial court noted Defendant's prior juvenile convictions of unauthorized entry of an inhabited dwelling in 2021 and aggravated assault with a firearm in 2023, both of which are felonies. Although Defendant graduated from a youth challenge program, he did not obtain a GED because he kept getting in trouble for fighting and missed too many classes. Defendant's age, seventeen at the time of the offense, documented ADHD, and troubled home life were the only mitigating factors. Simply put, Defendant is a menace. Since the age of sixteen, Defendant has continuously committed crimes when he was not already in custody. Multiple shots were fired into a home occupied by seven people because Defendant mistakenly thought it was someone else's home with whom he was angry. The victim, a three-year-old child, was shot in the head and had to undergo brain surgery. She has had to relearn how to walk and talk and now has seizures.

The maximum sentence Defendant faced for each conviction of attempted second degree murder was fifty years. La.R.S. 14:27 and 14:30.1. Instead, the trial

court sentenced Defendant to thirty years for each of the seven counts, to run concurrently with each other. His sentence is exactly in the middle of the sentencing range. As Defendant could have been sentenced to fifty years on just one conviction, we find that a total of thirty years for seven convictions is in no way shocking. The sentences lean more toward lenient given the facts of the case and Defendant's criminal history. Thus, we find that the trial court did not abuse its broad sentencing discretion and Defendant's sentences are not excessive.

## DECREE

For the foregoing reasons, we affirm Defendant's sentences. We further advise Defendant that in accordance with La.Code Crim.P. art. 930.8, no application for post-conviction relief shall be considered if it is filed more than two years after the judgment of conviction and sentence become final under the provisions of La.Code Crim.P. art. 914 or 922.

**AFFIRMED.**